650 So.2d 1148 (1995)
The FIRST NATIONAL BANK OF BOSTON
v.
BECKWITH MACHINERY COMPANY
v.
VIKING MARITEC, INC.
No. 94-CQ-2065.
Supreme Court of Louisiana.
February 20, 1995.
*1149 David S. Willenzik, Michael H. Rubin, for plaintiff.
Peter J. Butler, Aubrey B. Hirsch, Jr., Eric A. Schaffer, for defendant.
Mary E. Arceneaux, for Louisiana Bankers Ass'n, amicus curiae.
David S. Willenzik, Michael H. Rubin, for First Nat. Bank of Boston.
*1150 MARCUS, Justice[*].
Pursuant to La.R.S. 13:72.1 and Rule XII of the Supreme Court of Louisiana, the United States Court of Appeals for the Fifth Circuit has certified the following question of law to this court:
Which interest should have priority under Louisiana law: (1) a civil law "privilege" for suppliers of ship-building materials, thus giving Beckwith creditor priority rights, or (2) an earlier perfected UCC security interest, thus giving FNBB creditor priority rights.[1]
As Rule XII, § 3 requires, the certificate includes a statement of facts showing the nature of the cause and the circumstances out of which the question of law arises:
This case revolves around the construction and financing of a towboat. In 1992, Viking Maritec, Inc. ("Viking") and Avondale Industries, Inc. ("Avondale") entered into a contract for Avondale to build a towboat for Viking in exchange for a purchase price of $2.8 million. Viking entered into a credit agreement with First National Bank of Boston ("FNBB") to finance the purchase price due Avondale and to pay for other equipment for the vessel. FNBB agreed to lend Viking up to $4.8 million, and Viking executed a construction note in favor of FNBB. Viking also executed a "Louisiana Ship Mortgage and Security Agreement," granting the bank under the provisions of La.Rev.Stat.Ann. 10:9-101 10:9-604 (West 1993) a security interest in the towboat and its materials and components. FNBB perfected the security interest by filing a UCC-1 financing statement in the proper office on August 6, 1992. The documents stated that the Ship Mortgage Law and the Louisiana UCC would govern the security agreement. In early 1993, Viking purchased from Beckwith Machinery Company ("Beckwith") engines and related machinery, which were incorporated into the tugboat.
Viking did not pay either Beckwith or FNBB. After its demand for payment was not answered, FNBB filed an action in federal district court to have the unfinished and undocumented towboat seized and sold. Beckwith intervened, seeking priority through the Louisiana Civil Code which gives privileges to certain classes of creditors, including suppliers of ship-building materials and equipment. La.Civ.Code Ann. art. 3237 (West 1952). FNBB filed a motion asking the court to give priority instead to its perfected UCC security interest.
On July 26, 1993, the district court rendered a decision formally ranking FNBB's security interest in the vessel ahead of Beckwith's materialman's privilege. Judgment was entered on September 3, 1993, giving priority to the bank's security interest. Beckwith appeals from that judgment. In its memorandum and order, the district court expressed considerable doubt as to whether the Louisiana legislature intended such a result.
The question certified to this court raises two issues: (1) whether the priority rules contained in Chapter 9 of the Louisiana Commercial Laws[2] (Chapter 9) govern a ranking dispute between a materialman's privilege created pursuant to La.Civ.Code art. 3237(8) and a prior perfected security interest in the same goods created pursuant to Chapter 9; and (2) which of the foregoing interests has priority over the other.
Beckwith obtained a materialman's privilege on the engines and machinery sold to Viking and incorporated into the tugboat by operation of La.Civ.Code art. 3237, which provides in pertinent part:
The following debts are privileged on the price of ships and other vessels, in the order in which they are placed:
. . . .
8. Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if the vessel has never made a voyage; ....
It is undisputed that this privilege is nonpossessory; that is, its existence does not depend on Beckwith's possession of the goods, *1151 nor does Beckwith have possession of the goods. Additionally, the facts as stated in the certificate indicate that FNBB perfected its security interest prior to the time Beckwith's privilege arose. The first issue we must decide is whether the ranking dispute between Beckwith's nonpossessory materialman's privilege and FNBB's prior perfected security interest is governed by the provisions of Chapter 9. This is a case of first impression in this state.
Louisiana enacted Article 9 of the Uniform Commercial Code (UCC) as Chapter 9 of the Louisiana Commercial Laws[3] effective January 1, 1990, and was the last of all the states to do so.[4] Section 10:9-102 indicates the subject matter of Chapter 9 and provides in pertinent part:
(1) Except as otherwise provided in R.S. 10:9-104 on excluded transactions, this Chapter applies
(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts;
. . . .
(2) This Chapter applies to security interests created by contract, including pledge, assignment, chattel mortgage, other lien or title retention contract, and lease or consignment intended as security. This Chapter does not apply to statutory liens and privileges except as expressly provided herein....
(4) As used in this Chapter the following terms have the following meanings when they refer to property that is located in this state and is subject to its law:
. . . .
(b) "Lien" or "statutory lien" means a privilege created by the Louisiana Civil Code, Louisiana Revised Statutes of 1950, or other statutory authority, other than a vendor's privilege on immovable property. (Emphasis added.)[5]
The term "security interest" is defined in La.R.S. 10:1-201(37), which provides in pertinent part:
"Security interest" means an interest in personal property or fixtures, created by contract, which secures payment or performance of an obligation.... A lien or privilege created by the Louisiana Civil Code, the Louisiana Revised Statutes, or other statutory authority is not a security interest.... (Emphasis added.)
Section 10:9-104(c) on excluded transactions states, in pertinent part: "The provisions of this Chapter do not apply ... to a lien given by statute or other rule of law for services or materials except as provided in R.S. 10:9-201 and 10:9-310 on priority of such liens...." (Emphasis added.) These provisions, when read together, mean that a Louisiana privilege is not a "security interest" for Chapter 9 purposes, and the provisions of Chapter 9 do not govern such privileges, except as provided in §§ 10:9-201 and 10:9-310 on priority. Therefore, while Chapter 9 does not govern the creation or existence of Louisiana privileges (because such privileges arise by operation of law without the necessity of complying with the provisions of Chapter 9), the priority of such privileges vis-a-vis security interests is governed by Chapter 9 to the extent provided in §§ 10:9-201 and 10:9-310.[6]
Section 10:9-201 sets forth the basic priority rule of Chapter 9, and provides:
§ 9-201. General validity of security agreement
Except as otherwise provided by this Title, a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors, including those holding liens on property subject to this Chapter unless the statute creating the lien expressly provides to the contrary, and the lien depends *1152 on possession of the lien holder in which case the lien has preference to all security interests except those perfected before the lien arises. Nothing in this Chapter validates any charge or practice illegal under any statute or regulation thereunder governing usury, small loans, retail installment sales, or the like, or extends the application of any such statute or regulation to any transaction not otherwise subject thereto. (Emphasis added.)
Section 10:9-310 provides:
§ 9-310. Priority of certain liens arising by operation of law
When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services, or the holder of any other lien, the continued existence of which is dependent upon the possession of the goods by the lien holder, takes priority over a perfected security interest unless the statute creating the lien expressly provides otherwise. (Emphasis added.)
Both of these provisions are nonuniform, in that they vary from the standard version of the UCC drafted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws.[7] Louisiana has added the language emphasized above to the standard versions.[8] Louisiana is the only state which includes in its version of Article 9-201 language explicitly making the security interests effective against creditors holding liens on the same property.[9] Louisiana is also the only state which specifically makes liens subject to the provisions of § 10:9-201 in addition to § 10:9-310. Louisiana does this by including a nonuniform reference to § 10:9-201 in § 10:9-104(c) (the section listing excluded transactions). No other state includes such a reference. To the contrary, the only UCC provision which other states specifically make liens subject to is Article 9-310.[10] We believe the nonuniform language contained in § 10:9-104(c) combined with that in § 10:9-201, which states that a security agreement is "effective according to its terms ... against creditors ... holding liens on property subject to this Chapter...." compels the conclusion that the Louisiana Legislature intended to bring all priority disputes between Chapter 9 security interests and Louisiana privileges within the scope of Chapter 9. Furthermore, we interpret the nonuniform language in these statutes to mean that all Louisiana privileges, both possessory and nonpossessory, are subordinate to perfected Chapter 9 security interests[11] in the same property, unless those privileges fall within one of the limited exceptions giving them priority, which are contained later in § 10:9-201 and in § 10:9-310. Those exceptions will be examined next.[12]
*1153 Section 10:9-201 provides, in pertinent part, that a security interest is effective against those holding liens on the property:

unless the statute creating the lien expressly provides to the contrary, and the lien depends on possession of the lien holder in which case the lien has preference to all security interests except those perfected before the lien arises. (Emphasis added.)
Applying the language of this statute as written would lead to the following result: A lien is subordinate to a perfected Chapter 9 security interest, unless: (1) the statute creating the lien expressly provides to the contrary, and (2) the lien depends on possession of the lien holder. If these requirements are met, the lien has preference to all security interests except prior perfected security interests.
Section 10:9-310 is a very specific statute which only addresses the priority of a certain type of lien vis-a-vis a Chapter 9 security interest. That statute provides that a lien which meets one of the following criteria has priority over even a perfected security interest: (1) the lien is for services or materials furnished in the ordinary course of business with respect to goods which are in the possession of the lien holder; or (2) the existence of the lien is dependent upon the possession of the goods by the lien holder. A lien meeting either one of these criteria will have priority over a perfected security interest unless the statute creating the lien expressly subordinates it.
These two statutes give priority to certain types of possessory liens. However, when they are read together,[13] two conflicts between them become apparent. First, § 10:9-201 states that a possessory lien has priority over a security interest, except a prior perfected security interest, only if the statute creating the lien gives it priority, but § 10:9-310 states that a possessory lien has priority over a perfected security interest unless the statute creating the lien subordinates it. Obviously, possessory liens not meeting the criteria of § 10:9-201 (because the statute creating them does not provide for their priority over security interests), will meet the criteria of § 10:9-310, because they are granted priority unless the statute creating them expressly takes it away. This conflict would render the exception granted in § 10:9-201 meaningless, because possessory lien holders would simply disregard § 10:9-201 and invoke the priority granted in § 10:9-310.
While courts must generally interpret statutes as written, statutes on the same subject should be construed in harmony and unnecessary conflict should be avoided. State v. Piazza, 596 So.2d 817, 819 (La.1992). Courts should give effect to all parts of a statute, and not adopt a construction making any part superfluous or meaningless, if that result can be avoided. Dore v. Tugwell, 228 La. 807, 84 So.2d 199, 204 (1955), reh'g denied. Additionally, "[t]he object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959), reh'g denied.
Applying these principles of statutory interpretation, we hold that the provisions granting certain liens priority in § 10:9-201 must be construed to create two separate exceptions. First, a lien will be subordinate to a perfected Chapter 9 security interest unless the statute creating the lien expressly provides to the contrary. Second, a lien will be subordinate to a perfected Chapter 9 security interest unless the lien depends on possession of the lien holder, in which case the lien has preference to all security interests except those perfected before the lien arises.[14] All other privileges are subordinate to perfected Chapter 9 security interests. *1154 This interpretation results from reading the exception clause in § 10:9-201 as follows: a security interest is effective against a lien on the same property "unless the statute creating the lien expressly provides to the contrary, and [unless] the lien depends on possession of the lien holder in which case the lien has preference to all security interests except those perfected before the lien arises." (Emphasis added.) We believe this interpretation is consistent with a reading of Chapter 9's priority rules as a whole, and with the intent of the legislature. While there is no legislative history commenting on these specific provisions, nor are there any Louisiana comments illuminating the reasons for the variations from the standard version of the UCC, we are convinced that the legislature intended to authorize the granting of express priority of nonpossessory liens over security interests in specific statutes. The legislature's treatment of liens on unharvested crops in La.R.S. 9:4521 supports this proposition. That statute provides, as an express exception to the priority rule of § 10:9-201, that certain statutory privileges granted therein shall have priority over a perfected Chapter 9 security interest.[15] These privileges are nonpossessory because the privilege holders do not have possession of the unharvested crops. Therefore, the legislature has created an express exception granting specific nonpossessory privileges priority over perfected Chapter 9 security interests. Reading the language of § 10:9-201 as a single exception with two conditions (instead of two separate exceptions) would not allow such a result, because it would only allow priority for possessory privileges. We reject that reading because we believe the legislature has the authority to enact exceptions to the priority rules of Chapter 9 for all types of privileges. We hold that § 10:9-201 contains two separate exceptions wherein a privilege may be granted priority over a perfected security interest,[16] one of them being when the legislature expressly provides for such priority in the statute creating the privilege.[17]
Having reconciled §§ 10:9-201 and 10:9-310 to the extent the facts of this case require, we must next decide if any of the exceptions granting Louisiana privileges priority over Chapter 9 security interests apply to the nonpossessory materialman's privilege held by Beckwith. The exceptions contained in § 10:9-310 only govern the priority of certain possessory privileges vis-a-vis perfected security interests. Since the privilege at issue in the present case is nonpossessory, § 10:9-310 does not apply. Additionally, the second exception contained in § 10:9-201 only governs possessory liens, so does not apply. That leaves the first exception in § 10:9-201, which subordinates a privilege to a perfected security interest unless the privilege is expressly granted priority in the statute which creates it. Therefore, we must determine if the statute creating Beckwith's privilege expressly grants it priority.
Civil Code article 3237(8) is the source of Beckwith's privilege. While that article does rank the various privileges created therein with respect to each other, it does not rank the materialman's privilege vis-a-vis *1155 a Chapter 9 security interest. However, Beckwith claims the legislature specifically acknowledged that this privilege had priority over all other claims in the Ship Mortgage Law[18] (enacted in 1975); specifically in La. R.S. 9:5524(D). Beckwith further claims that, by the enactment of La.R.S. 9:5538 in conjunction with the enactment of Louisiana's Chapter 9, the legislature explicitly provided for the priority of this privilege over a Chapter 9 security interest. Looking beyond the Civil Code article creating the privilege, without deciding if we may, we hold that the Ship Mortgage Law does not give an article 3237(8) materialman's privilege priority over a prior perfected Chapter 9 security interest.
Section 9:5538 provides, in pertinent part:
A. This Chapter [the Ship Mortgage Law] shall apply to Louisiana ship mortgages that were entered into prior to the time Chapter 9 ... became effective.... B. The provisions of R.S. 9:5522, 5523, 5524, 5525, 5531, 5532, 5533, and 5534 shall continue to apply to the security interests and agreements concerning ships under construction that are entered into under Chapter 9 of the Louisiana Commercial Laws. (Emphasis added.)
This statute provides that, in general, the Ship Mortgage Law only applies to ship mortgages entered into prior to January 1, 1990, the effective date of Chapter 9. However, it preserves the applicability of certain provisions of the Ship Mortgage Law to Chapter 9 security interests, including La. R.S. 9:5524(D), upon which Beckwith relies. That section provides:
D. No other person shall acquire any rights in the work, materials, components, or completed ship, title to which is vested in the purchaser, by purchase from the builder and no such work, materials, components, or ship shall be liable to seizure and attachment in behalf of the creditors of the builder, but nothing contained in this Chapter [the Ship Mortgage Law] shall affect any rights or privileges granted by law to sellers, laborers, and suppliers of materials in the construction of the ship or to the builder. (Emphasis added.)
Beckwith claims the last clause of this section specifically preserves the historical priority which those supplying materials to vessels have enjoyed over other security interests in the vessel. We disagree. The referenced clause must not be read in isolation, but must be read in conjunction with the rest of the statute, and with the other provisions of the Ship Mortgage Law. When so read, it is clear that § 9:5524(D) merely prohibits the shipbuilder from selling or creating liens against the vessel when the purchaser of the vessel is the owner while it is under construction. In other words, since the purchaser (Viking) is the owner, the shipbuilder (Avondale) has no right to create such encumbrances. This provision protects the purchaser and creditors of the purchaser from claims by creditors of the shipbuilder. The significance of the last clause is that, if the shipbuilder contracts with sellers, laborers, or suppliers of materials for the construction of the ship, this prohibition will not prevent the creation by law of a privilege against the vessel. However, the fact that the privilege exists does not mean it has priority over a Chapter 9 security interest. Section 9:5524(D) does not govern a priority dispute between two creditors of the purchaser when one holds a Chapter 9 security interest and the other holds a privilege (as in the present case).
The provision in the Ship Mortgage Law which addresses priority conflicts is La.R.S. 9:5528, which provides:
Every mortgage of a ship shall be effective as against third persons from the time of filing in the proper offices, and the filing shall be notice to all parties of the existence of the mortgage, which shall be superior in rank to any privilege or preference arising subsequent thereto, but nothing contained in this Chapter shall affect any rights or privileges granted by law to sellers, laborers, and suppliers of materials in the construction of the ship or to the builder.
Significantly, this provision was not continued in force by § 9:5538, so does not apply to ship mortgages entered into after 1989. Accordingly, it does not govern a ranking dispute between a privilege and a ship mortgage entered into after the effective date of Chapter 9. Based on the foregoing, we conclude that neither the Civil Code article creating the privilege nor the Ship Mortgage Law expressly provides that the nonpossessory privilege at issue in the present case has priority over a prior perfected security *1156 interest. Therefore, since this privilege meets none of the exceptions contained in §§ 10:9-201 or 10:9-310 which would grant it priority, it is subject to the general rule of § 10:9-201, which subordinates a privilege to a perfected security interest. Therefore, FNBB's prior perfected Chapter 9 security interest has priority over Beckwith's nonpossessory materialman's privilege.
We recognize that the application of the provisions of Chapter 9 to resolve a priority dispute between a nonpossessory lien holder and a Chapter 9 security interest is a departure from the approach adopted by a majority of the states. However, this different treatment is due specifically and solely to the nonuniform language added by our legislature to §§ 10:9-104(c) and 10:9-201.[19] While one of the general policies of the UCC is to "promote uniformity of the law among the various jurisdictions,"[20] this policy cannot govern when Louisiana's version of the UCC is nonuniform. Furthermore, Louisiana was the last of the 50 states to adopt Article 9 of the UCC. Therefore, our legislators had the advantage of studying the experience of the other states with their provisions before enacting them. "[L]aws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject...." City of New Orleans v. Board of Supervisors of Elections, Parish of Orleans, 216 La. 116, 43 So.2d 237, 247 (1949), reh'g denied.
Furthermore, we observe that the legislature's enactment of La.R.S. 9:4770 entitled "Conflicts in favor of Chapter 9 of the Louisiana Commercial Laws" as part of the UCC Implementation Bill[21] provides additional support for our conclusion that priority disputes between Louisiana privileges and Chapter 9 security interests are governed by the provisions of Chapter 9. That statute provides:
This Code Title (Code Title XXI of Code Book III, R.S. 9:4501 et seq.), Part 8 of Chapter 7 of the Louisiana Mineral Code (R.S. 31:146 through 148), and Title XXI of Book III of the Louisiana Civil Code (Arts. 3182 through 3277) shall be interpreted and applied consistent with Chapter 9 of the Louisiana Commercial Laws. Other than as provided in R.S. 9:4521, any conflict between the priority ranking of privileges under this Title, Part 8 of Chapter 7 of the Louisiana Mineral Code, and under Title XXI of Book III of the Louisiana Civil Code with the priority ranking rules of Chapter 9 of the Louisiana Commercial Laws shall be resolved in favor of the priority ranking rules of Chapter 9 with regard to secured transactions subject thereto. Whether a sale or lease was entered into before or after January 1, 1990, the rights of a vendor under Civil Code Articles 2561, 3217(7), and 3227 or of a lessor under Civil Code Articles 2705 and 3218 or Mineral Code Article 146 are subordinate to the rights of a secured party with a perfected security interest under Chapter 9 of the Louisiana Commercial Laws. (Emphasis added.)
While we find no conflict between article 3237 or the Ship Mortgage Law and Chapter 9 regarding the priority of the nonpossessory materialman's privilege at issue (because we find that the former two laws do not address such priority), the legislature's express resolution of any such conflicts in favor of Chapter 9 is a clear indication of the legislature's intent to favor perfected Chapter 9 security interests over nonpossessory Louisiana privileges.
As a final matter, we point out that our holding does not leave creditors like Beckwith *1157 without means to protect their interests. As a financing seller of engines used in the construction of the vessel, Beckwith could have obtained a "purchase money security interest" in these goods, La.R.S. 10:9-107(a), and could have achieved superpriority status. "A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within thirty days thereafter." La.R.S. 10:9-312(4).[22] Instead, Beckwith sold over $1.2 million in engines and equipment on an open-account basis.

JUDGMENT
For the foregoing reasons, we render the following judgment in response to the certified question:
A prior perfected Chapter 9 security interest created pursuant to La.R.S. 10:9-101 et seq. has priority over a nonpossessory materialman's privilege granted to a supplier of ship-building materials under La.Civ. Code art. 3237(8).
It is ordered that, pursuant to Louisiana Supreme Court Rule XII, § 9, the clerk of this court send this judgment under the seal of this court to the United States Court of Appeals for the Fifth Circuit and to the parties.
NOTES
[*] Watson, J., not on panel. Rule IV, Part 2, § 3.
[1] 26 F.3d 580 (5th Cir.1994), certification granted, 94-2065 (La. 11/18/94), 648 So.2d 379.
[2] La.R.S. 10:9-101 et seq.
[3] Article 9 of the UCC is called "Chapter 9" in Louisiana, apparently to prevent confusion with the word "article" as it is used to identify provisions of Louisiana's Civil Code. See William D. Hawkland, Hawkland's Handbook on Chapter 9 Louisiana Commercial Law at iv (1990).
[4] Henry D. Gabriel, Louisiana Security Rights in Personal Property § 1(A) (1994).
[5] The terms "lien" and "privilege" as used interchangeably throughout this opinion refer to those defined in La.R.S. 10:9-102(4)(b).
[6] See Thomas A. Harrell, A Guide to the Provisions of Chapter Nine of Louisiana's Commercial Code, 50 La.L.Rev. 711, 721 n. 9 (1990): "It is perhaps more accurate to simply state that a statutory privilege is not a security interest, but that the act does to some extent regulate the priority of security interests vis-a-vis privileges."
[7] For clarity of reference, provisions in the standard version of the UCC will be referred to as "Article" and provisions in the Louisiana version will be referred to by their Revised Statute citation.
[8] See Uniform Commercial Code Reporting Service, Code Text §§ 9-201 & 9-310 (Robert E. Emeritz et al. eds., 1994).
[9] See 8 Ronald A. Anderson, Anderson on the Uniform Commercial Code §§ 9-104 & 9-201 (3d ed. 1985 & Supp.1994); 8 William D. Hawkland et al., Uniform Commercial Code Series §§ 9-104 & 9-201 (1990 & Supp.1994).
[10] See 8 Anderson, supra note 9, §§ 9-104 & 9-201; 9 Anderson, supra note 9, § 9-310; 8 Hawkland, supra note 9, §§ 9-104 & 9-201; 9 Hawkland, supra note 9, § 9-310.
[11] We only address the priority of a perfected Chapter 9 security interest because that is the type at issue in the present case.
[12] Beckwith argues that § 10:9-201 only addresses the validity of a security agreement, and not the priority. It claims that the overall structure of the UCC supports this argument, because Part 2 addresses validity and Part 3 addresses priority. While this argument is superficially appealing, we must reject it. We believe that § 10:9-201 establishes the basic rule of priority of Chapter 9 security interests by saying they are "effective ... against" creditors, including those holding liens on the property. This basic rule is subject to numerous exceptions contained in the UCC. However, where an exception does not alter this basic rule of priority, a perfected security interest (the only type addressed here) takes priority over a lien. See §§ 10:9-201 and 10:9-310. Section 10:9-104(c) also supports this view by making liens subject to "R.S. 10:9-201 and 10:9-310 on priority of such liens...." (Emphasis added.) Chancellor William D. Hawkland, a leading scholar on the UCC, agrees with this view. He states that, while Part 3 of the UCC undertakes the task of allocating priority among conflicting interests, "[c]uriously ... the basic priority rule of this Act is found not in Part 3, but in Part 2, namely in [La.] UCC § 9-201...." Hawkland, supra note 3, § 3:01. Chancellor Hawkland also states that "§ 9-201 is important because it sets the base from which most of the priority rules of Article 9 proceed." Id.
[13] La.Civ.Code art. 13: "Laws on the same subject matter must be interpreted in reference to each other."
[14] This clause gives rise to the second conflict between §§ 10:9-201 and 10:9-310. Section 10:9-201 gives possessory liens priority over all security interests except prior perfected security interests, while § 10:9-310 gives possessory liens priority over prior perfected security interests. Obviously, the priority granted in § 10:9-310 is much broader than that granted in § 10:9-201. This conflict renders the priority granted in § 10:9-201 meaningless, because those holding possessory liens will simply invoke the priority granted in § 10:9-310, disregarding the more limited priority granted in § 10:9-201. Because a possessory lien is not at issue in this case, we need not resolve this conflict.
[15] La.R.S. 9:4521 provides, in pertinent part:

As a specific exception to R.S. 9:4770 and R.S. 10:9-201, the following statutory privileges and perfected security interests as affecting unharvested crops shall be ranked in the following order of preference ...:
(1) Privilege of the laborer, the thresherman, combineman, grain drier, and the overseer.
(2) Privilege of the lessor.
(3) Perfected security interests under Chapter 9 of the Louisiana Commercial Laws in the order of filing,....
[16] Both parties assume the interpretation we reach, that is, that § 10:9-201 creates two separate exceptions by which liens may be granted priority.
[17] We note that the original version of § 10:9-201, as enacted by Acts 1988, No. 528, contained the language "or unless" in the exception clause after the words "provides to the contrary." Such language supports the interpretation that this statute creates two separate exceptions by which liens may be granted priority. However, this language was changed to simply "and" by Acts 1990, No. 1079, without explanation. The reengrossed version of this Act makes no mention of the change, and it appears for the first time in the enrolled version without comment. This change created the conflict between §§ 10:9-201 and 10:9-310 which we are resolving today. While it is generally true that a later version of a statute should prevail, we cannot follow this practice when it creates an express conflict rendering part of the later statute meaningless. This is especially true when the two statutes in question are part of the same general law, namely, Chapter 9 of the Louisiana Commercial Laws.
[18] La.R.S. 9:5521-9:5538.
[19] The standard version of the UCC only subjects liens to the specific priority rules for possessory liens contained in Article 9-310. The standard version of Article 9-104(c) does not subject liens to the priority rules contained in Article 9-201. Additionally, the standard version of Article 9-201 contains no language making security interests effective against liens. Based on our research of the treatment of liens in other states, a majority of the states (which have adopted the standard or substantially similar versions of the aforementioned provisions), holds that Article 9-310 is the only article governing priority disputes between liens and security interests. These states reason that, since that article governs possessory liens only, a priority conflict between a nonpossessory lien and an Article 9 security interest is to be resolved by reference to law outside the UCC. See e.g., In re Brazier Forest Products, Inc., 106 Wash.2d 588, 724 P.2d 970 (1986); First Maryland Leasecorp v. M/V Golden Egret, 764 F.2d 749 (11th Cir.1985) (applying Alabama law); Smith v. Atlantic Boat Builder, 356 So.2d 359 (Fla.Dist.Ct.App.1978), reh'g denied; Leger Mill Co., Inc. v. Kleen-Leen, Inc., 563 P.2d 132 (Okla.1977). See generally 8-9 Hawkland, supra note 9; 8-9 Anderson, supra note 9.
[20] La.R.S. 10:1-102(2)(c).
[21] Acts 1989, No. 137, § 5.
[22] Additionally, since the engines Beckwith sold were installed into the vessel under construction, Beckwith may have been able to obtain the protection provided in La.R.S. 10:9-314 governing "accessions."