STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-125


FERRELL LAVERGNE

VERSUS

QUALITY FABRICATORS OF EUNICE, INC., ET AL.


**********
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 99-C-2071-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John D. Saunders, Oswald A. Decuir, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**Gremillion, J., dissents and assigns written reasons.**

**AFFIRMED AS AMENDED.**

**Jere Jay Bice**
**Bice & Palermo**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**Counsel for Plaintiff/Appellee**
**Ferrell Lavergne**

**Michael J. Remondet, Jr.**
**Jeansonne & Remondet**
**P.O. Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**Counsel for Secondary Defendants/Appellants**
**Quality Fabricators of Eunice, Inc.**
**Clarendon American Ins. Co.**

**Henry H. LeBas**
**5750 Johnston St., Ste 5100**
**Lafayette, LA 70503**
**(337) 988-4500**
**Counsel for Intervenor/Appellant**
**Eagle Pacific Insurance Company**

**Todd A. Delcambre**
**5750 Johnston St., Suite 5100**
**Lafayette, LA 70503**
**(337) 988-4500**
**Counsel for Intervenor/Appellant**
**Eagle Pacific Insurance Company**

**Jill M. Kraemer**
**5750 Johnston St., Suite 5100**
**Lafayette, LA 70503**
**(337) 988-4500**
**Counsel for Intervenor/Appellant**
**Eagle Pacific Insurance Company**

**SAUNDERS, J.**

The intervenor, Eagle Pacific Insurance Company, appeals the amount of reimbursement awarded by the trial court in this workers' compensation matter. The plaintiff, Ferrell Lavergne, entered into an unauthorized settlement with the defendants, Quality Fabricators of Eunice and Clarendon America Insurance Company (Quality Fabricators), for $25,000. In its intervention, Eagle Pacific was awarded that amount rather than the total amount of its workers' compensation lien, $124,905.90. Quality Fabricators also appeals. For the following reasons, we affirm as amended.

**FACTS**

This is the second time this workers' compensation matter has come before us. As stated in our original opinion, Lavergne suffered a work-related injury when the tank he was sandblasting started rolling. Thereafter, he filed suit against Quality Fabricators and its insurer, Clarendon, for its failure to properly secure the tank to its trailer. Eagle Pacific intervened in the suit seeking to recover the workers' compensation and medical benefits paid to Lavergne. After the case was submitted to the jury, Lavergne reached a high-low agreement with Quality Fabricators, whereby they would pay him $25,000 plus judicial interest if the jury returned an award of less than $25,000, but would only pay him $300,000 plus judicial interest if the jury returned an award in excess of that amount. In exchange for the agreement, the parties agreed that there would be no post-trial motions or appeals. After the jury returned a verdict finding no fault on the part of Quality Fabricators, the trial court rendered a final judgment in its favor and against Lavergne and Eagle Pacific

dismissing all claims against them with full prejudice.

Following the rendition of this judgment, Eagle Pacific sought leave to file a Supplemental Petition of Intervention alleging its right to collect its workers' compensation lien from Quality Fabricators since the settlement was reached without its consent. La.R.S. 23:1102(C)(1). The trial court denied Eagle Pacific leave to file its supplemental petition of intervention.

Eagle Pacific appealed the trial court's denial arguing that it should have specified that the judgment was without prejudice as to its reimbursement claim for workers' compensation and medical benefits pursuant to La.R.S. 23:1102(C). After considering the high-low agreement and determining that it was a valid compromise, we held that Eagle Pacific's intervention was still viable and that the trial court erred in dismissing its claims against Quality Fabricators. *Lavergne v. Quality Fabricators of Eunice, Inc.*, 02-548 (La.App. 3 Cir. 12/11/02), 832 So.2d 1176, *writ denied*, 03-0127 (La. 3/21/03), 840 So.2d 540.

Following our judgment, Eagle Pacific filed a Supplemental Petition of Intervention alleging that it did not consent to the settlement between Lavergne and Quality Fabricators and that it was entitled to collect its entire workers' compensation lien from Quality Fabricators pursuant to La.R.S. 23:1102(C)(1). The lien amounted to $134,905.90. It further stated that Lavergne bought back his rights to workers' compensation benefits by paying it $10,000 in compliance with La.R.S. 23:1102(B) thus bringing the outstanding lien to $124,905.90. Eagle Pacific then settled Lavergne's workers' compensation claim. It also filed a motion for summary judgment against Quality Fabricators seeking to recoup its lien.

2

Quality Fabricators filed a motion for summary judgment seeking the dismissal of Eagle Pacific's claims with prejudice. It also filed a motion for summary judgment against Lavergne seeking defense, indemnity, and reimbursement for the claims asserted by Eagle Pacific. Lavergne filed a cross motion for summary judgment against Quality Fabricators arguing that he was not required to indemnify it. Following a hearing on the motions, the trial court denied Quality Fabricators' motion and granted summary judgment in favor of Eagle Pacific ordering Quality Fabricators to reimburse it $25,000. The trial court further denied Quality Fabricators' motion for summary judgment seeking indemnity from Lavergne and granted summary judgment in his favor. Both Eagle Pacific and Quality Fabricators appeal from this matter.

**ISSUES**

On appeal, Eagle Pacific raises one assignment of error. It argues that the trial court erred in awarding it $25,000, rather than the full amount of its workers' compensation lien pursuant to the plain language of La.R.S. 23:1102(C)(1).

Quality Fabricators raises four assignments of error on appeal. It argues that the trial court erred in: granting summary judgment in favor of Eagle Pacific; awarding damages to Eagle Pacific; and granting summary judgment in favor of Lavergne on the issue of indemnity. It also argues that we, along with the trial court, erred in finding that the high-low agreement was a compromise.

**STANDARD OF REVIEW**

The proper standard of review for an appellate court considering summary judgment is de novo. "Appellate courts review summary judgments *de novo*. It is

3

well established that a summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Palma, Inc., v. Crane Servs. Inc.*, 03-0614 (La.App. 3 Cir. 11/5/03), 858 So.2d 772, 774. La. C.C.P. 966.

## HIGH-LOW AGREEMENT

Quality Fabricators argues that we erred in finding that the high-low agreement was a valid compromise pursuant to La.Civ.Code art. 3071. Although we previously determined that such an agreement was a compromise, it argues that that determination was not at issue in the prior appeal.

Quality Fabricators is correct in stating that the issue in the prior appeal was whether Eagle Pacific's claim against Quality Fabricators should have been dismissed with full prejudice. Whether the high-low agreement was a valid compromise, however, was an integral part of our determination. We stated:

> In this case, an agreement was reached between Lavergne and Quality, whereby they agreed to a high and low cap on the amount he would recover, contingent on the jury's award, which agreement would put an end to the lawsuit between them. Since this agreement was recited in open court, we find that it was a valid compromise.

*Id.* at 1179. Prior to that statement, we proclaimed that "the parties agreed that there would be no post-trial motions or appeals filed by the parties." *Id.* at 1178.

We disagree with Quality Fabricators' pronouncement that the high-low agreement was not a compromise because the differences between the parties were not settled. The matters between Lavergne and Quality Fabricators were settled as

4

a result of this agreement. The high-low agreement effectively put an end to Lavergne's claims against Quality Fabricators in the main demand. Although Quality Fabricators has raised an issue against him in the intervention, Lavergne's claim against it in the main demand has come to an end. Thus, we agree with our previous finding that the high-low agreement was a valid compromise pursuant to La.Civ.Code art. 3071.[1] This assignment of error is dismissed as being without merit.

**UNAUTHORIZED COMPROMISE**

In its second assignment of error, Quality Fabricators argues that the trial court erred in granting summary judgment in favor of Eagle Pacific by finding that the high-low agreement was an unauthorized compromise.

Louisiana Revised Statute 23:1102(C)(1) provides:

> When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain written approval of the compromise from the employer or his insurer at the time of or prior to such a compromise and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise, the third party defendant or his insurer shall be required to reimburse the employer or his insurer to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section. Notwithstanding such payment, all rights of the

---

[1] Louisiana Civil Code Article 3071 provides:

A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

5

employer or his insurer to assert the defense provided herein against the employee's claim for future compensation or medical benefits shall be reserved.

The above quoted statute is clear with regard to the right of an insurer to recoup workers' compensation benefits paid to an injured employee when prior approval of a compromise is not obtained from the insurer. As succinctly stated by this court in *Miller v. Louisiana Farm Bureau Casualty Insurance Co.*, 95-1087, pp. 3-4 (La.App. 3 Cir. 3/6/96), 670 So.2d 622, 624, the intent of the legislature controls in statutory interpretation:

> In *Moore v. Gencorp, Inc.*, 93-0814 (La. 3/22/94), 633 So.2d 1268, the supreme court stated that if the intent of the legislature is clear, that it is the end of the matter; courts must give effect to unambiguously expressed intent of the legislature if its application does not lead to absurd consequences. The legislature clearly intended in La.R.S. 23:1102(C)(1) that the workers' compensation insurer who intervenes in a suit which the employee has against a third party shall have priority to recoup all benefits paid and that in the event of any settlement negotiations or compromise, the insurer shall be notified of said negotiations.

We find, as we did in *Miller*, that the legislature's intent is clear in this situation. Quality Fabricators should have notified Eagle Pacific that it was negotiating an end to Lavergne's claims prior to entering into the high-low agreement. Because it failed to obtain Eagle Pacific's written approval for this agreement, Eagle Pacific is entitled to recoup the benefits it paid Lavergne from Quality Fabricators. We find no merit in Quality Fabricators' argument that Eagle Pacific's rights first had to be affected before the high-low agreement could be considered unauthorized. Nor do we find any merit to its claim that Eagle Pacific waived its right to approve the compromise by not participating in the trial. The judgment of the trial court granting summary judgment on the part of Eagle Pacific

6

and in denying Quality Fabricators' motion for summary judgment is affirmed.

**REIMBURSEMENT AMOUNT**

In its third assignment of error, Quality Fabricators argues that the trial court erred in awarding reimbursement of $25,000 to Eagle Pacific. Eagle Pacific also appeals this award arguing that it should have been awarded $124,905.90.

Quality Fabricators references both La.R.S. 23:1102(A) and (B) in arguing that, based on the jury's finding of no fault on its part, it owes no reimbursement to Eagle Pacific for Lavergne's injuries. It further argues that equity, justice, and reason preponderate in favor of a finding that a defendant should not pay for damages it did not cause. Although we agree in principle with these assertions, Quality Fabricators has lost the right to assert these arguments because it compromised Lavergne's claim. Had it not entered into the high-low agreement with Lavergne, Quality Fabricators would have owed no reimbursement to Eagle Pacific for Lavergne's work-related accident. To reduce its exposure, however, it chose to settle his claim via the described compromise. The jury's finding of no fault on its part has no bearing on this compromise. Accordingly, we find no merit in this assignment of error.

Eagle Pacific, on the other hand, argues that the trial court erred in awarding it $25,000 in reimbursement, rather than $124,905.90. This argument is based upon La.R.S. 23:1102(C)(1), which states in pertinent part:

> [T]he third party defendant or his insurer shall be required to reimburse the employer or his insurer **to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of the employee** to the extent said amounts have not been previously paid to the employer or his insurer by the employee pursuant to the provisions of Subsection B of this Section.

[Emphasis added]. It is important to note that this statute is penal in nature; therefore,

7

it must be strictly construed against Quality because it was Quality who failed to obtain Eagle Pacific's consent to the agreement. We believe that, especially given the construction applicable to this article, the highlighted portion indicates that Eagle Pacific is entitled to reimbursement for the full amount of the lien, or $124,950.90. Eagle Pacific is entitled to this sum as it is the "total amount paid on behalf of the employee." La.R.S. 23:1102(C)(1).

The purpose of the statute is to guarantee that workers' compensation employers and insurers will get reimbursed. More specifically, it is intended to avoid the unfortunate consequence wherein an employer or insurer, who is due such reimbursement, learns too late that a compromise has been reached thus resulting in their being unable to recoup money paid to or on behalf of an injured employee due to possible insolvency of the parties involved. Louisiana Revised Statute 12:1102 (C)(1) clearly states that reimbursement is required for the total amount of compensation and medical benefits previously paid on behalf of the employee. Eagle Pacific paid $124,950.90 in workers' compensation and medical benefits, and that is the amount it should be reimbursed. As a consequence of entering into the unauthorized agreement with Lavergne, Quality Fabricators is required to pay Eagle Pacific the full amount of the lien totaling $124,950.90.

**INDEMNITY**

In its final assignment of error, Quality Fabricators agues that the trial court erred in finding that Lavergne was not required to indemnify it pursuant to the terms of the compromise agreement.

A compromise agreement is a contract. *Soileau v. Allstate Ins. Co.*, 03-120

8

(La.App. 3 Cir. 10/15/03), 857 So.2d 1264, *writ denied*, 03-3170 (La. 2/6/04), 865 So.2d 724. Thus, the indemnity agreement contained in this compromise is a contractual agreement to be interpreted pursuant to the rules of contractual interpretation. *Soloco, Inc. v. Dupree*, 99-1476 (La.App. 3 Cir. 2/9/00), 758 So.2d 851, *appeal after remand*, 00-1361 (La.App. 3 Cir. 2/28/01), 780 So.2d 623. The intent of the parties confecting the agreement determines its interpretation. La.Civ.Code art. 2045. If the words of the agreement are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code art. 2046. Louisiana Civil Code Article 3073 further provides that a compromise extends only "to those matters that the parties expressly intended to settle and that the scope of the transaction cannot be extended by implication." *Brown v. Drillers, Inc.*, 93-1019, p. 7 (La. 1/14/94), 630 So.2d 741, 748.

The terms of the compromise relating to indemnification provide:

> For the same consideration recited above, the Appearer does, by these presents, agree to defend, indemnify and hold harmless QUALITY FABRICATORS OF EUNICE, IND. and CLARENDON AMERICAN INSURANCE COMPANY, and the remaining persons, firms, and corporations released hereby, from and against any claims, demands, or causes of action, of whatever kind or nature, which may be asserted against such parties as a result of the accident which has been described hereinabove by any person, firm or corporation, whether such claims, demands or causes of action be meritorious or otherwise.

We agree with the trial court that Quality Fabricators's claim for indemnity in this instance does not arise "as a result of the accident," as provided by the indemnity agreement. Rather, the claim arises from its failure to obtain authorization from Eagle Pacific prior to entering into the compromise with Lavergne. Thus, this claim

9

is separate and apart from those arising as a result of the accident, as contemplated in the indemnity clause.  Had the parties intended to include this type claim in the indemnity agreement, they easily could have tailored the wording more specifically to include it.  Finding that Lavergne is not required to indemnify Quality Fabricators as a result of this intervention, the judgment of the trial court granting summary judgment in favor of Lavergne is affirmed.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court, granting summary judgment in favor of Eagle Pacific and Lavergne, are affirmed.  The judgment of the trial court awarding Eagle Pacific reimbursement of $25,000 is increased to $124,950.90.  Finally, the judgment of the trial court denying summary judgment in favor of Quality Fabricators  is affirmed.  The costs of this appeal are assessed to defendants-appellees/appellants, Quality Fabricators of Eunice and Clarendon America Insurance Company.

**AFFIRMED AS AMENDED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-125

FERRELL LAVERGNE

VERSUS

QUALITY FABRICATORS OF EUNICE, INC., ET AL.

GREMILLION, J., dissents and assigns written reasons.

I am cognizant of that portion of La.R.S. 23:1102(C)(1) which the majority relies on in finding that Quality Fabricators must reimburse Eagle Pacific the full sum of $124,905.90, "to the extent of the total amount of compensation benefits and medical benefits previously paid to or on behalf of [Lavergne]."

However, I respectfully disagree as to how my colleagues on the majority construe the statute and would find that Quality Fabricators should be liable only for $25,000 for "funds received [by Lavergne] as a result of the compromise." *See* La.R.S. 23:1102(C)(1). The majority opinion cites the last portion of La.R.S. 23:1102(C)(1) in its opinion, neglecting the first part of the statute which reads:

> When a suit has been filed against a third party defendant in which the employer or his insurer has intervened, if the third party defendant or his insurer fails to obtain written approval of the compromise from the employer or his insurer at the time of or prior to such compromise **and the employee fails to pay to the employer or his insurer the total amount of compensation benefits and medical benefits out of the funds received as a result of the compromise . . . .**

(Emphasis added).

1

In awarding Eagle Pacific $25,000 in reimbursement, the trial court

stated:

> Well, I do find that they're entitled to summary judgment, but I limit the
> amount of recovery as a matter of law that they're entitled to, to twenty-
> five thousand dollars based upon 23:1102(C) insofar as it states that the
> compensation carrier is entitled to a reimbursement or a payment out of
> the funds received as a result of a compromise by the plaintiff. Since
> Quality gave twenty-five thousand dollars to Mr. Lavergne, that's the
> extent that I think the Legislature intended that you should recover from
> the plaintiff as well.

I have found no other cases in which the settlement amount received by

the injured employee was less than the amount of workers' compensation paid by the

employer. However, I agree with the trial court in that I do not believe the

Legislature intended the employer or its insurer to recoup any more than the employee

received in settlement.

The rules pertaining to statutory interpretation were recently laid out by

the supreme court in *Palmer v. Louisiana State Board of Elementary and Secondary

Education*, 02-2043, pp. 4-6 (La. 4/9/03), 842 So.2d 363, 367-68:

> Principles of judicial interpretation of statutes are designed to
> ascertain and enforce the intent of the legislature in enacting the statute.
> *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La.6/29/01), 808
> So.2d 294[,] [c]iting *Stogner v. Stogner*, 98-3044, p. 5 (La.7/7/99), 739
> So.2d 762, 766; *State v. Piazza*, 596 So.2d 817, 819 (La.1992). The
> fundamental question in all cases of statutory construction is legislative
> intent and the reasons that prompted the legislature to enact the law.
> *Succession of Boyter*, 99-0761, p. 9 (La.1/7/00), 756 So.2d 1122, 1128.
> When a law is clear and unambiguous and its application does not lead
> to absurd consequences, it shall be applied as written, with no further
> inquiry made in search of the legislative intent. La. C.C. art. 9; La. R.S.
> 1:4. However, when a law is susceptible of different meanings, "it must
> be interpreted as having the meaning that best conforms to the purpose
> of the law." La. C.C. art. 10.

> The meaning and intent of a law is determined by considering the
> law in its entirety and all other laws concerning the same subject matter

2

and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. *Bond, supra* at 302; *Boyter, supra* at 1129; *Stogner, supra* at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. *Boyter*, 756 at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. *Langlois v. East Baton Rouge Parish Sch. Bd.*, 99-2007 (La.5/16/00), 761 So.2d 504, 507; *Boyter*, 756 at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153 (quoting *Smith v. Flournoy*, 238 La. 432, 115 So.2d 809, 814 (1959)).

The starting point for the interpretation of any statute is the language of the statute itself. *Cat's Meow, Inc. v. City of New Orleans*, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; *Touchard v. Williams*, 617 So.2d 885 (La.1993).

After considering La.R.S. 23:1102(C)(1) in its entirety, it is my opinion that the Legislature intended to reimburse the employer in the event of an unauthorized settlement by awarding it reimbursement up to the amount of the settlement received. Although the third-party defendant is required to reimburse the employer or insurer, it is only required to do so "to the extent of the total amount" of benefits paid to the employee. "Extent" is defined in the Merriam-Webster's Collegiate Dictionary, (11 ed. 2003), as "the range over which something extends." Blacks Law Dictionary, (6th ed. 1990), defines "extent" as the "[a]mount; scope; range; magnitude." Thus, the language, "to the extent of the benefits paid," implies that there is a range in the amount to be repaid extending up to the total amount paid on behalf of the employee.

3

I believe this interpretation is supported by the fact, as noted by the majority, that La.R.S. 23:1102(C)(1) is penal in nature. Again, I respectfully disagree with the majority's position that to strictly construe the statute is to require Quality Fabricators to pay the entire amount of benefits expended by Eagle Pacific on Lavergne's behalf. "Strict construction of a penal statute requires that it be interpreted AGAINST imposition of penalty . . . ." *Albe v. Albe*, 97-1042, p. 6 (La.App. 4 Cir. 11/19/97), 703 So.2d 756, 759, *writ denied*, 97-3048 (La. 2/13/98), 709 So.2d 752. "When a law is strictly interpreted, it must not be extended beyond its obvious meaning." *Monteville v. Terrebonne Parish Consol. Gov't*, 567 So.2d 1097, 1100 (La.1990).

If a penalty statute is to be strictly construed against awarding a penalty, then it can be gainsaid that the amount of the penalty should be limited in its amount, scope, range, and magnitude. Further, it seems to me to be unfair and inequitable to require Quality Fabricators to pay five times more in penalty than the size of the settlement it confected with Lavergne.

In my opinion, the "obvious meaning" of La.R.S. 23:1102(C)(1) is to allow the employee to obtain reimbursement from the employee's settlement funds up to the amount of the settlement funds received in the compromise. Therefore, if the employee paid the employer, the amount of the reimbursement cannot exceed the amount of the settlement. If the employee does not pay the employer, strict construction of the statute demands that the third party should not have to pay the employer a sum of more than the amount, scope, range, or magnitude of the compromise as reimbursement.

4

Accordingly, I respectfully dissent from that portion of the majority opinion which requires Quality Fabricators to pay Eagle Pacific $124,905.90 and would find the award should be $25,000. I agree with the majority opinion in all other respects.