### FORTIER et al. v. DELGADO & CO.

#### (Circuit Court of Appeals, Fifth Circuit.   March 24, 1903.)

#### No. 1,190.

1. LIENS—LABORERS' PRIVILEGE UNDER LOUISIANA STATUTE—NATURE OF CONTRACT.

Persons having contracts with a sugar refinery to weigh and load cane on cars for shipment to the refinery at an agreed price per ton, and who hire and pay the laborers to do the work, are independent contractors, and are not workmen or laborers on a plantation whose wages have a special privilege on the crop under the laws of Louisiana, nor clerks, secretaries, or agents entitled to a privilege for their salaries against the property of the refining company under such laws.

2. EQUITABLE ASSIGNMENT—CHECKS DRAWN ON SPECIAL FUND.

The superintendent of a sugar refinery kept a distinct deposit in a bank, separate from his general account, on which he drew checks stamped "Cash Account" in payment of wages to laborers and other items of expense, as distinguished from payments made in the purchase of cane, which were made by checks on his general deposit. He drew two checks on the "cash account," upon which a second bank advanced the money to be used, and which was used, in the payment of laborers. Before such checks were presented for payment, a receiver was appointed for the refinery company, who obtained possession of the fund upon which they were drawn, which was sufficient for their payment. *Held*, that under such circumstances the checks operated as an equitable assignment of so much of the special fund as was necessary for their payment.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

In Equity.

F. Rivers Richardson, R. L. Tullis, and Philip H. Mentz, for appellants.

John Clegg, Lamar Q. Quintero, and James Legendre, for appellees.

Before McCORMICK and SHELBY, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. The case entitled as above, being an appeal from the Circuit Court for the Eastern District of Louisiana, brings to this court in one record the action of the Circuit Court on five intervening petitions filed in the case of Alfred H. Morris against the Caffery Sugar Refinery Company, which action of the Circuit Court was adverse to all the petitioners, the court having confirmed the report of the special master finding against the claims of each of the interveners. Four of these intervening petitioners, whose claims were of the same character, were Florian Fortier, Henri Jullien, A. & L. Delcambre, and Spencer B. Roane. The Caffery Company, which was called, in Louisiana, a "central refinery," was placed in the hands of a receiver on the 18th of January, 1902. The business of this company was to raise cane to some extent; also the purchasing of cane from the surrounding plantations, and the grinding and manufacturing the same into sugar and molasses.

The record shows that these several parties had contracts with the Caffery Company to weigh and load cane on railroad cars for transportation and delivery to the refinery. The scales, derricks, and machinery used for the purpose of weighing and loading the cane were furnished by the company, and the interveners operating them with laborers employed and paid by them, and for this they received a fixed compensation of from 5 to 25 cents for each ton of cane handled. The special master found that all these parties were independent contractors, and were not workmen and laborers employed in working the plantations of the Caffery Company, and whose wages, under the laws of Louisiana, would have a special privilege on the crop. The special master also found against the contention that they were clerks, secretaries, or agents, whose salaries are privileged under the laws of that state, as to both the movables and immovables of the debtor. The conclusions of the special master were, on exceptions thereto, confirmed by the Circuit Court, and we see no error in the action of the court as to either of these claims. The evidence seems to sustain the findings of the court as to these interveners. The action of the Circuit Court confirming a report of the same special master, which was against an intervening petition filed by the State Bank of New Iberia, is brought to this court in the same record.

The Caffery Company operated three plantations, and among them one known as the "Peeples Plantation." It further appears from the record that the money for the operation of this refinery was furnished by Delgado & Co., a New Orleans firm. It is shown that, in order to pay small bills, laborers' wages, etc., money was deposited from time to time in the St. Mary Bank, at Franklin, La. This money was placed in the St. Mary Bank by Hewitt Chapman, who was the general manager of the refinery company, to be used by Lucius Forsyth, Jr., who was superintendent and local manager for the company. On the afternoon of January 17th the State Bank of New Iberia cashed for Mr. Forsyth two checks, aggregating $3,550, drawn on the St. Mary Bank. The money was drawn to be used, and it was used, to pay laborers on the Peeples plantation.

The intervening petition of the State Bank of New Iberia set up substantially the above facts, and then claimed that the money in the St. Mary Bank was a special and particular fund, and that the drawing of the checks and their transfer operated as a legal and equitable assignment of the amount of money represented on the face of the checks on deposit to the credit of the refinery company in the St. Mary Bank. The prayer of the intervening petition was that out of the money on deposit in the St. Mary Bank the receiver be required to pay the petitioner's claim in preference to all other claims against the corporation, and that it have a decree that there had been an equitable assignment of so much of the fund on deposit as was necessary to pay the checks, and that the sum withdrawn from the payee bank by the receiver be declared subject to said checks, and that the receiver be ordered to apply said sum to their payment and extinguishment. This intervening petition was by the Circuit Court referred to a special master. The report of the special mas-

ter embraces other matters, but so much of it as refers to this particular claim is. as follows:

"The claim of the State Bank of New Iberia for $3,550 has been established by the proofs, and it is allowed as an ordinary unsecured debt of the Caffery Company. The facts with regard to this claim are as follows: It appears from the proof that Lucius Forsyth, Jr., in his capacity as assistant manager of the Caffery Company, drew two checks, dated January 17, 1902, aggregating $3,550, on the St. Mary Bank of Franklin, payable to his own order, for the purpose of obtaining money to pay laborers on the Peeples plantation, which were cashed by the State Bank of New Iberia the same day, and the proceeds used by Forsyth to pay the laborers. At the time the checks were drawn there was a sufficient amount of money in the St. Mary Bank to the credit of the Caffery Company, and subject to the check of said manager, to pay the same in full. But before the checks were presented for payment by the State Bank of New Iberia the receiver was appointed in this case, who obtained possession of the whole fund, leaving nothing in the bank to pay them when presented on the 20th of January, 1902. It is alleged in the petition of intervention of the New Iberia Bank that the fund in the St. Mary Bank against which the checks were drawn was a special fund placed there for the purpose of paying the wages of laborers and other current expense of working the defendant's plantations. Such averment, it seems, would be necessary to bring the intervener's case within the rule established by some of the proofs. Mr. Chapman, the principal and best-informed witness examined on the point, says the money was placed in the St. Mary Bank 'to pay any expenses that would come, in the way of any small minor bills,' and, further testifying in answer to direct question on the point, he said: 'There was nothing special about it [the bank account]. It was for whatever might come up in small bills, and so on, not labor particularly.' If the checks had been presented to the St. Mary Bank while the fund was in its possession, it would, no doubt, have operated as an assignment of the fund to the State Bank to the amount of the checks, under the peculiar provisions of the state law, although the fund was not a special one. Gordon & Gomila v. Muchler, 34 La. Ann. 605. At the common law a check drawn against a particular fund, specially appropriated to its payment, would also operate as an assignment of the fund. Citizens' Bank of Louisiana v. First National Bank, L. R. 6 H. L. 352; 7 Moak, Eng. R. 56. But I find no case in this country or in England, and none in the decisions of the Supreme Court of this state, which holds that a check drawn against a general credit operates as an assignment of the credit, unless notified to the debtor of the credit. The general rule outside of Louisiana is that the holder of a check or order or a draft has not even an action against the bank until after acceptance. Bank v. Millard, 10 Wall. 152, 19 L. Ed. 897; St. Louis & S. R. R. Co. v. Johnston, 133 U. S. 574, 10 Sup. Ct. 890, 33 L. Ed. 683. I have read the very able brief of Mr. Mentz, filed in support of the claim of the bank for equitable lien, with great care, and, while it appeals most strongly to my sense of natural justice, I am unable to adopt his views, under the state of the law as I find it. The brief is submitted with this report for the information of the court."

The report of the master, adverse to the claim of the intervener, was confirmed in the Circuit Court, and that decision is here for review.

It is undoubtedly true that a check drawn upon a general fund in a bank gives the payee no right of action against the bank until it is accepted, and it is also true that such a check against a general fund would not operate as an assignment of the fund. So the question to be determined here is as to the character of the fund in the St. Mary Bank. A part of the evidence of Mr. Chapman, the general manager of the Caffery Company, was as follows:

"Q. Was this money not kept there for the purpose of paying just such debts as Mr. Forsyth paid with these two checks? A. Yes, sir. He kept that separately, as near as I can remember, so as to keep tab on those advances. Q. As I understand it, you had a fund in that bank on which checks might be drawn by Mr. Forsyth in order to pay just exactly the kind of debt he paid on the 17th of January. Is that it? I mean to say the paying of wages? A. Yes, sir. All small accounts, so as to keep tab and separate these two accounts—separate the advances—so that I could keep tab on the different accounts of expenditures. Q. So you had a fund set apart for that particular kind of debt? A. No; I sent a check up to him, and he set that apart. Q. Then he had a fund set apart for that particular kind of debt? A. Yes, sir; to pay these small amounts—petty cash, as you might say—usually about $1,000. When he spent that $1,000, I would send him up another. I would send him a check for five or ten thousand dollars. He set aside about $1,000 to meet his petty cash accounts —small bills. Q. Am I to understand that he kept this so-called 'Franklin cash account' in order to have a special fund on which to draw to pay for such accounts as laborers? A. Not a special fund. He only separated it so I could keep tab on what he expended for cane and his petty cash. Q. But the fund was set apart? A. He set that apart. He did not set it apart, but simply divided it so I would know what he was doing—what his petty cash was, and what his expenditures for cane were. You know all little incidental expenses around places like that are numerous—telephone bills, and anything like that. Q. Answer this general question in your own way: How came he to draw checks stamped 'Franklin Cash Account,' and with that money to clear off the payroll on the Peeples plantation? A. Simply as I tell you, so that I could keep tab on what he was spending for advances on cane and clearing off the pay rolls around the place there. They had no special time for paying off the laborers. If a man was discharged, he would pay him off right then. It was simply to keep tab between the general expenditures for cane and so on and his pay roll, from week to week."

This fund in the St. Mary Bank was, in a sense, a particular fund. The general fund used by the Caffery Company was that which was obtained by drafts on Delgado & Co., who furnished the money for the operations of the refinery. One special purpose for which the fund in the St. Mary Bank was to be used by Mr. Forsyth, the superintendent, was to pay laborers; and the money advanced by the New Iberia Bank to Forsyth was advanced for that purpose. These two checks drawn by Mr. Forsyth had stamped upon them "Franklin Cash Account," showing that they were drawn on a distinct fund, one of the main purposes of which, as the evidence discloses, was to pay laborers.

It has been conceded for the receiver in open court that, had he known that these checks had been drawn, he would not have withdrawn the money from the St. Mary Bank. In Fourth Street Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855, in the opinion of a majority of the court by Mr. Justice White, this language is used (page 644, 165 U. S., page 440, 17 Sup. Ct., 41 L. Ed. 855):

"Whilst an equitable assignment or lien will not arise against a deposit account solely by reason of a check drawn against the same, yet the authorities establish that if, in the transaction connected with the delivery of the check, it was the understanding and agreement of the parties that an advance about to be made should be a charge on, and be satisfied out of, a specified fund, a court of equity will lend its aid to carry such an agreement into effect as against the drawer of the check, mere volunteers, and parties charged with notice. This is but an application of the general doctrine

of equitable assignments or lien announced by this court in Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999, where it was held, citing various authorities and text-writers, that: 'A party may, by agreement, create a charge or claim in the nature of a lien on real as well as on personal property whereof he is the owner or in possession, which a court of equity will enforce against him and volunteers' or claimants under him with notice of the agreement.' It is immaterial, for the purposes of this case, to draw a line of distinction between equitable assignments and equitable liens or charges."

The record here does not disclose what occurred between Forsyth and the officers of the State Bank of New Iberia at the time the checks were cashed; but it must be true that the bank understood that there was a fund placed to the credit of Mr. Forsyth for the particular purpose for which he desired to use the money advanced to him on these checks. An examination of the entire reasoning of the court in Fourth Street Bank v. Yardley, supra, we think sustains the view that these checks should be treated as an assignment to the extent called for by them of the fund in the St. Mary Bank. The checks were not given for any indebtedness to the bank, nor can we think it should be considered as an ordinary or usual transaction. It was an advance by the State Bank of New Iberia of an amount to pay laborers on the Peeples plantation, on the afternoon immediately preceding the receivership, by checks drawn on a fund which afterwards went into the hands of a receiver. If Mr. Forsyth had not obtained the money on these checks from the New Iberia Bank to pay these laborers on the Peeples plantation on the 17th, it would probably have been necessary for him to have used the money in the St. Mary Bank on which these checks were drawn to pay the very claims for which Mr. Forsyth used the money received by him on the checks.

Our conclusion is that under all the facts of this case the checks should be treated as an assignment of so much of the fund in the St. Mary Bank as was necessary to pay them. If the receiver had not obtained the benefit of the money in the St. Mary Bank, he would have been compelled necessarily to use other funds coming into his hands as receiver for the purposes to which this was applied. We think, therefore, that this $3,550 should be paid to the State Bank of New Iberia out of any funds now in the hands of the receiver, preferably from the fund arising from the sale of the real estate of the Caffery Company embracing the plantations and the personalty connected with the refinery and plantations, rather than from the fund derived from the sale of the sugar and molasses.

The action of the Circuit Court as brought up in this record is therefore modified in this respect, and, as modified, it is affirmed.