676 So.2d 643 (1996)
BAYOU PIERRE FARMS, Plaintiff-Appellee,
v.
BAT FARMS PARTNERS, III, et al., Defendants-Appellants.
No. 95-1669.
Court of Appeal of Louisiana, Third Circuit.
May 29, 1996.
*644 C. Calvin Adams Jr., Tallulah, for Bayou Pierre Farms.
Ted David Hernandez, Natchitoches, for Bat Farms Ptnrs., III et al.
Stephen Paul Strohschein, Baton Rouge, for Ag Services of America, Inc.
William Shands Carter Jr., Ruston, Kenneth D. McCoy Jr., Gregory D. Friedman, Natchitoches, for T.L. James & Co. & Melrose Planting Co. Inc.
*645 Margaret Shook Gravolet, New Orleans, for Dept. of Agriculture and Forestry.
Charles Raymond Whitehead III, Natchitoches, for Louisiana Gin Company, Inc. et al.
Eugene Allen, Columbia, for Caldwell Bank & Trust Company.
Before YELVERTON, KNOLL and COOKS, JJ.
YELVERTON, Judge.
This case involves the ranking of security interests in the proceeds from the sale of a cotton crop. There are four competing parties. They are two lessors, the crop lender, and the cotton picker. The proceeds of the cotton were insufficient to satisfy the claims of the creditors. The proceeds were deposited into the registry of the court. The trial court rendered money judgments for the rent in favor of the two lessors and for services in favor of the cotton picker. (In oral reasons the judge promised to do the same for the crop lender as soon as appropriate pleadings were filed, but there is no judgment in the record in favor of the crop lender.) The trial court then rendered judgment ranking the security interests held by the parties in the following order: No. 1 the cotton picker; No. 2the two lessors; and No. 3the crop lender. The two lessors and the crop lender appeal this judgment. We modify the judgments, re-ranking as follows:
No. 1the first lessor (T.L. James Company, Inc.)
No. 2the crop lender (Ag Services of America, Inc.)
No. 3the cotton picker (Bayou Pierre Farms)
No. 4the second lessor (Melrose Planting Company, Inc.)

BACKGROUND FACTS
On April 5, 1993, Bat Farms Partners leased land in Natchitoches Parish from T.L. James Company, Inc. (T.L. James) at a rental of $55,000, to grow cotton and corn. The parties executed an agricultural security agreement on the crops. The parties filed a UCC-1F form (financing statement) on April 13, 1993, pursuant to La.R.S. 3:3651 et seq. and La.R.S. 10:9-101 et seq. to secure the land lease. T.L. James also leased farm equipment to S & E Planting Co., one of the partners of Bat Farms, for $5,000.
Bat Farms subsequently arranged a crop loan from Ag Services of America, Inc. (Ag Services) for $190,000. The loan was secured by an agricultural security agreement listing as collateral the crops on the land leased by T.L. James as well as crops on other leased lands. A UCC-1F form was filed on May 3, 1993. The financing statement was filed under both La.R.S. 3:3651 et seq. and La.R.S. 10:9-101 et seq.
Then, T.L. James sold the land subject to Bat Farms' lease to Melrose Planting Company, Inc. (Melrose). The sale was subject to the Bat Farm's land lease and equipment lease. T.L. James and Melrose agreed between themselves to a pro rata distribution of the rents due under the lease. Melrose filed a UCC-1F form on July 12, 1993.
On July 28, 1993, by a written contract, Bat Farms hired Bayou Pierre Farms (Bayou Pierre) to pick the cotton in Natchitoches Parish. By an act of crop pledge Bat Farms granted Bayou Pierre a security interest in the cotton and the proceeds of the cotton. Bayou Pierre perfected its security interest by filing a UCC-1F form on July 29, 1993.
The cotton crop was raised, picked, moduled, ginned, baled, and sold. When it was discovered that the proceeds were insufficient to pay all claims of the creditors of Bat Farms, Bayou Pierre was the first to file suit. Bayou Pierre asked for a writ of sequestration on the warehouse receipts or proceeds from the sale of the cotton and prayed that there be judgment recognizing its entitlement to $47,700 of the proceeds and attorney's fees.
Melrose, T.L. James, and Ag Services each answered the suit and filed a reconventional demand against Bayou Pierre. A proliferation of cross-claims, third-party demands, and oblique actions followed.
After the proceeds from the sale of the cotton, $124,412.05, were deposited into the registry of the court, T.L. James, Melrose, *646 and Bayou Pierre all filed motions for summary judgment and rules to rank the liens.
By stipulation, the parties agreed to consolidate the motions for summary judgment and rules regarding the security interests and their ranking. They stipulated what the evidence was and consented that the court could render a final judgment on the evidence in the summary proceedings.
The trial court granted the motions of T.L. James and Melrose for summary judgment awarding them rent for the land of $55,000, plus interest and attorney's fees. It also awarded them $5,000 plus interest against S & E Planting Co. and others for rent under the equipment lease. The trial court granted Bayou Pierre's motion for summary judgment awarding it $39,264.50, with interest and attorney's fees, representing the harvest of the cotton in Natchitoches Parish.
A final judgment was signed ranking the priority of the liens in accordance with La. R.S. 9:4521. Bayou Pierre was ranked first, T.L. James and Melrose together were ranked second, and Ag Services was ranked third.
T.L. James, Melrose, and Ag Services appeal the judgment. For the reasons which follow we affirm the money judgments, and modify the ranking judgment.

Ranking of Security Interests
The only common assignment of error asserted by T.L. James, Melrose, and Ag Services is that Bayou Pierre as a cotton picker should not have been ranked in the first category of La.R.S. 9:4521. Ag Services additionally argues that James and Melrose do not have lessor's privileges and that La. R.S. 9:4521 is not applicable in the present case.
La.R.S. 9:4521 provides:
As a specific exception to R.S. 9:4770 and R.S. 10:9-201, the following statutory privileges and perfected security interests as affecting unharvested crops shall be ranked in the following order of preference, provided that such privileges and security interests have been properly filed and maintained in accordance with the central registry provisions of R.S. 3:3651 et seq.:
(1) Privilege of the laborer, the thresherman, combineman, grain drier, and the overseer.
(2) Privilege of the lessor.
(3) Perfected security interests under Chapter 9 of the Louisiana Commercial Laws in the order of filing, as provided by R.S. 3:3651 et seq.
(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.
The Louisiana Supreme Court has said that all privileges, both possessory and nonpossessory, are subordinate to perfected Chapter 9 security interests in the same property, unless privileges fall within one of the limited exceptions giving them priority. First Nat. Bank v. Beckwith Machinery, 94-2065 (La. 2/20/95); 650 So.2d 1148. La.R.S. 9:4521 is one of those exceptions. Id.

Application of La.R.S. 9:4521 to the Present Case
Ag Services makes the argument that La. R.S. 9:4521 applies only to unharvested crops, not to the proceeds of harvested crops. It claims that it is wrong to apply it in the present case which involves the ranking of security interests in the proceeds of a cotton crop.
La.R.S. 9:4521 was amended in 1991 by Acts 1991, No. 539, § 2, effective January 1, 1992. That amendment rewrote the introductory paragraph and included the language "as affecting unharvested crops." Ag Services would have this court interpret the change as limiting the protection it provides to certain lienholders in unharvested crops only. Once the crops were harvested, Ag Services argues that La.R.S. 9:4521 no longer applied. We disagree with this interpretation.
The words of a law must be given their generally prevailing meaning. Backhus v. Transit Cas. Co., 549 So.2d 283 (La.1989). The rules of statutory construction require a court to determine the intent and purpose of the legislature in enacting the law and to give effect, if possible, to that intent and purpose. Id.; U.S. Pollution Control v. Nat. *647 American, 95-153 (La.App. 3 Cir. 8/30/95); 663 So.2d 119.
Ag Services admits that its construction of the statute creates an illogical consequence for some of the protected classes like the combineman and the thresherman. We find that it was the legislature's intent and more logically follows that the purpose of the limiting language "unharvested" meant that the crops must have been unharvested at the time the privilege or perfected security interest attached for La.R.S. 9:4521 to apply. This interpretation gives effect to the statute providing protection for those who provide services and money for the benefit of a crop before it is harvested and sold. We find that this was the legislature's intent and purpose. La.R.S. 9:4521 is applicable to the present case.

Cotton Picker's Privilege
T.L. James, Melrose, and Ag Services claim that Bayou Pierre does not have a privilege as a laborer, thresherman, combineman, grain drier, nor overseer as contemplated by the No. 1 order of preference in La. R.S. 9:4521. Obviously, the only definition a cotton picker may fall under is a laborer and our analysis will focus on that definition. La.Civ.Code art. 3217(3) gives laborers a crop privilege to secure the payment of their wages. Therefore, we will consider whether Bayou Pierre is a laborer entitled to a privilege over the crop under La.Civ.Code art. 3217 and La.R.S. 9:4521.
In interpreting statutes granting liens and privileges, courts generally construe the statutes against the claimant. P.H.A.C. Services v. Seaways Intern., 403 So.2d 1199 (La.1981); Genina Marine Serv. v. Arco Oil & Gas, 552 So.2d 1005 (La.App. 1 Cir.1989), writ denied, 556 So.2d 1281 (La. 1990). There have been no recent cases involving the laborer's privilege and who is considered a laborer for the purposes of asserting the privilege. In Saloy v. Dragon, 37 La.Ann. 71, 72 (1885), the court interpreted Article 3217 as conferring a privilege "on laborers who worked upon the crop in any and all of its stages in the planting, cultivating, gathering and preparing it for market, and who performed any work on the plantation required for such purposes or incident thereto." An old federal case held that persons having a contract with a sugar refinery to weigh and load sugar cane on cars for shipment to the refinery at an agreed price per ton, and who hired and paid the laborers to do the work, were independent contractors and not workmen or laborers on a plantation whose wages had a special privilege on the crops. Fortier v. Delgado & Co., 122 F. 604 (5th Cir.1903).
Pursuant to a written "Contract To Harvest" Bayou Pierre, a partnership, was hired to pick all the cotton grown by Bat Farms in 1993. In the contract Bayou Pierre was referred to as a contractor. A minimum price of $55 an acre and a maximum of twelve cents per lint pound was agreed on. The contractor was required to furnish two four-row John Deere cotton pickers and two two-row John Deere cotton pickers, along with two module builders, a boll buggy, and all necessary tractors and other equipment. Although the contract made no mention of supplying people to operate the mechanical equipment and tag the modules, obviously it was also the contractor's responsibility to hire and pay the wages of the necessary personnel.
Bayou Pierre, the partnership, is claiming the privilege, but it never picked the cotton itself. It only hired the people who operated the mechanical cotton pickers that picked the cotton. Bayou Pierre was paid a contract price for the amount of cotton picked. It still had to pay the wages of the workers who actually ran the machines that picked the cotton. It is these workers that the privilege was intended to protect, not the contractor who hired them. A strict construction of the law requires us to find that Bayou Pierre did not have an Article 3217 laborer's privilege.

Lessor's Privilege
Ag Services argues that T.L. James and Melrose cannot occupy the No. 2 order of preference under La.R.S. 9:4521, because they do not have a lessor's privilege under La.Civ.Code arts. 2705 and 3218. It claims that T.L. James and Melrose lost their privilege *648 when the cotton was picked and removed from the land, and they failed to exercise their privilege within 15 days of the removal of the cotton. We agree.
In the exercise of the right of privilege, the lessor may seize the objects subject to his privilege before the lessee removes them from the leased premises, or within fifteen days after they have been removed by the lessee without the consent of the lessor, if they continue to be property of the lessee, and can be identified. La.Civ.Code art. 2709; Burton v. Jardell, 589 So.2d 610 (La.App. 2 Cir.1991).
"In Louisiana, the lessor must exercise his privilege while the crops are still on the lessee's premises or within fifteen days after they have been removed from the premises, provided the crops still remain in the lessee's possession." Jack A. Bornemann, Crop Liens and Privileges in Louisiana, 14 Tul.L.Rev. 444, 446 (1940).
In the present case, neither T.L. James nor Melrose timely exercised their lessor's privilege. The crop was taken out of the field and ginned in November 1993. A writ of sequestration was not issued until Bayou Pierre filed its suit and asked for one on March 9, 1994. Therefore, T.L. James and Melrose lost their lessor's privilege with respect to the cotton crop.

Perfected Security Interests
Since we find that none of the parties is entitled to assert a privilege over the proceeds of the cotton crop by virtue of the first and second orders of preference of La.R.S. 9:4521, we will now address whether the parties have perfected security interests under Chapter 9 of the Louisiana Commercial Laws pursuant to the filing provisions of La.R.S. 3:3651 et seq., and whether, therefore, they are to be ranked in the order of filing under La.R.S. 9:4521(3), the third order of preference.
Pursuant to La.R.S. 10:9-303, a security interest is perfected when it has attached and when all the applicable steps required for perfection have been taken. In order for the security interest in Bat Farms' cotton to attach, Bat Farms had to sign a written security agreement which contained a description of the cotton, value must have been given, and Bat Farms must have had rights in the cotton. La.R.S. 10:9-203(1). It was required that a financing statement be filed. La.R.S. 10:9-302.
For La.R.S. 9:4521 to govern the rank of privileges and security interests in crops, a financing statement must be filed in accordance with La.R.S. 3:3651. An effective financing statement must be filed with the central registry created by the Secretary of State. La.R.S. 3:3652 and 3654. The proper place to file effective financing statements is with the clerk of court of any parish, or, in the case of Orleans Parish, with the recorder of mortgages. La.R.S. 3:3656(A)(1). The central registry shall reflect the time and date each effective financing statement is filed, and only effective financing statements filed with the filing officer for inclusion in the central registry shall be effective against third parties. La.R.S. 3:3656(D).
An effective financing statement shall (1) be an original or reproduced copy; (2) be signed and filed with the filing officer by the creditor; (3) be signed by the debtor; and (4) contain the name and address of both the debtor and creditor; the social security number of the debtor or, if a debtor doing business other than as an individual, the IRS taxpayer number; a description of the farm products subject to the security interest created by the debtor; and a reasonable description of the property. La.R.S. 3:3654(E)(1)(2)(3) and (4).
In the present case all parties, except Melrose, took the necessary steps as set forth above to perfect a security interest. Melrose attempts to rely on the security agreement executed between T.L. James and Bat Farms. However, the contract of sale between T.L. James and Bat Farms never assigned the security agreement. Also, Melrose did not execute its own security agreement with Bat Farms.
T.L. James filed its financing statement first on April 13, 1993; Ag Services filed its financing statement on May 3, 1993; Melrose filed its financing statement on July 12, 1993; *649 and Bayou Pierre filed its financing statement on July 29, 1993.
"The assignment of a right includes its accessories such as security rights." La.Civ. Code art. 2645. The transfer of the T.L. James' lease with Bat Farms to Melrose included the security agreement granting the lessor a security interest in the crops grown on the land to secure the payment of the rent. This, however, applies only to the rights of T.L. James and Melrose in relation to each other.
Pursuant to La.R.S. 3:3656 an assignment of a financing statement must contain the original file number, and be filed with the same filing officer with whom the effective financing statement was originally filed. Melrose's financing statement did not include the original file number and in no way indicated that it was an assignment of a financing statement. An examination of the records in the central registry would not have put third parties on notice that Melrose had the same filing date as T.L. James. We find that Melrose cannot rely on T.L. James' financing statement for ranking purposes.
We also find that Melrose's own financing statement is not an "effective financing statement" as there was no signature of the debtor as required by La.R.S. 3:3654(E)(3). Therefore, Melrose did not have a perfected security interest in the proceeds of the cotton crop.
Accordingly, pursuant to La.R.S. 9:4521 the security interests are ranked as follows: No. 1T.L. James; No. 2Ag Services; and No. 3Bayou Pierre. Melrose's place is fourth, not by virtue of the ranking statute, but only because it is the only remaining secured creditor.

The Equipment Lease
Ag Services argues that T.L. James does not possess a security interest over the proceeds to secure the equipment lease. It points out that Bat Farms was not a party to the equipment lease. The equipment lease was granted to one of Bat Farms' general partners, S & E Planting Co. We agree.
The security agreement entered into between T.L. James and Bat Farms provided that it was to secure the lease and other indebtedness that the grantor, Bat Farms, might thereafter incur from T.L. James. S & E Planting Co. signed as a partner. While specific mention of the property lease was made, no mention of the equipment lease was made in the security agreement even though it was signed on the same day.
The equipment lease was an agreement between T.L. James as lessor and S & E Planting Co. as lessee. The equipment lease provided in paragraph 4.1 that the "[t]enant agrees to execute all security agreements, financing statements and any other document requested by Lessor in order to secure the rights of Lessor under this Lease." There was no additional security agreement between S & E Planting Co. and T.L. James. Also, no reference was made in the equipment lease to the security agreement between T.L. James and Bat Farms.
We find that the security agreement entered into between T.L. James and Bat Farms did not extend to the equipment lease. Therefore, a security interest in the proceeds never attached. La.R.S. 10:9-203(1)(a). The judgment granting T.L. James and Melrose a security interest as security for the rent due under the equipment loan is in error, and will be reversed.

Proceeds
Ag Services points out the failure of the judgment to recognize that T.L. James and Melrose do not have an interest in all of the proceeds deposited into the registry of the court. Specifically, reference is made to an affidavit whereby T.L. James and Melrose acknowledge that $6,220.45 of the proceeds was attributed to cotton grown in Red River Parish and not subject to their claims limited to proceeds of cotton grown in Natchitoches Parish. In brief T.L. James and Melrose agree with this fact. Therefore, we will amend the judgment accordingly.

Grant of Summary Judgment to Bayou Pierre
Asserting an oblique action on behalf of Bat Farms pursuant to La.Civ.Code art. 2044, Ag Services claims that the trial court *650 erred in granting summary judgment to Bayou Pierre for the full amount of its cotton picking claim. We will not consider this contention. It is now moot. As a result of its appeal Ag Services has jumped ahead of Bayou Pierre in the order of preference to the proceeds, and it can no longer benefit from the oblique action.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to rank the security interests of the parties in the following order: No. 1T.L. James Company, Inc.; No. 2Ag Services of America, Inc.; No. 3Bayou Pierre Farms; and No. 4Melrose Planting Company, Inc.
The judgment in favor of T.L. James Company, Inc. and Melrose Planting Company, Inc., recognizing their security interests as to the funds on deposit is amended to eliminate the items of $5,000 representing rent for the equipment lease, and $6,220.45 representing cotton grown outside Natchitoches Parish.
In all other respects the judgment is affirmed. Bayou Pierre Farms will pay the costs of this appeal.
AMENDED AND AFFIRMED.