693 So.2d 1158 (1997)
BAYOU PIERRE FARMS
v.
BAT FARMS PARTNERS, III, et al.
No. 96-C-2826.
Supreme Court of Louisiana.
May 20, 1997.
C. Calvin Adams, Jr., Tallulah, for Applicant.
Ted David Hernandez, Natchitoches; McGlinchey, Stafford, Lang, Stephen Paul Strohschein, Baton Rouge; Michael H. Rubin, Baton Rouge, Daykins, Coyle, & Carter, William Shands Carter, Jr., Ruston; Kenneth D. McCoy, Jr., Natchitoches, Margaret Gravolet, McCoy & Hawthorne, Natchitoches, for Respondent.
KIMBALL, Justice.[*]
We granted certiorari to determine whether Bayou Pierre Farms (Bayou Pierre), a Louisiana general partnership which contracted with Bat Farms Partners (Bat Farms), also a Louisiana general partnership, to pick all of the cotton grown by Bat Farms, qualifies as a laborer pursuant to La.R.S. 9:4521 and La.C.C. art. 3217 and would thus be ranked as the first privilege on the funds derived from the sale of that cotton now on deposit in the registry of the court. Though there were competing claimants for these funds, the district court, in accordance with La.R.S. 9:4521, ranked Bayou Pierre ahead of the other claimants. The court of appeal reversed, finding that Bayou Pierre was not a laborer and therefore was not entitled to a first ranking privilege on the funds on deposit in the registry of the court. For the reasons explained more fully below, *1159 we affirm the judgment of the court of appeal.

FACTS
On April 5, 1993, Bat Farms leased land in Natchitoches Parish from T.L. James Company, Inc. (T.L. James) at a rental of $55,000. Bat Farms leased this land to grow cotton and corn. The parties executed an agricultural security agreement on the crops. On April 13, 1993, to secure the land lease, the parties filed a UCC-1F form pursuant to La.R.S. 3:3651 et seq. and La.R.S. 10:9-101 et seq. T.L. James also leased farm equipment to S & E Planting Co., one of the partners of Bat Farms for $5,000.
After leasing the land from T.L. James, Bat Farms arranged a crop loan from Ag Services of America, Inc. (Ag Services) for $190,000. This loan was secured by an agricultural security agreement listing as collateral the crops on the land leased from T.L. James as well as crops on other leased lands. On May 3, 1993, to secure the loan, the parties filed a UCC-1F form pursuant to La.R.S. 3:3651 et seq. and La.R.S. 10:9-101 et seq.
T.L. James then sold the land subject to Bat Farms' land lease and equipment lease to Melrose Planting Company, Inc. (Melrose). T.L. James and Melrose agreed between themselves to a pro-rata distribution of the rents due under Bat Farms' lease. On July 12, 1993, to secure its interest, Melrose filed a UCC-1F form pursuant to La.R.S. 3:3651 et seq. and La.R.S. 10:9-101 et seq.
On July 28, 1993, by written contract, Bat Farms hired Bayou Pierre to pick the cotton grown by Bat Farms in Natchitoches Parish. Under the terms of the contract, Bayou Pierre, who is referred to as "Contractor" in the contract, was to receive ten cents per lint pound to pick the cotton the first time and if the cotton was required to be picked a second time, it was to receive twelve cents per lint pound. A minimum contract price of fifty-five dollars per acre was established in the event the price per lint pound times the number of pounds did not exceed $55.00 per acre. According to the terms of the contract, Bayou Pierre was to provide two four-row John Deere cotton pickers, two two-row John Deere cotton pickers, two module builders and one boll buggy, together with tractors and other equipment necessary to complete the contract. The contract also provided that Bat Farms was responsible to Bayou Pierre for reasonable attorney's fees, fixed in the amount of twenty-five percent of the amount due under the contract if it was necessary for Bayou Pierre to retain an attorney to collect any sums due under the contract. By an act of crop pledge, Bat Farms granted Bayou Pierre a security interest in the cotton and its proceeds. On July 29, 1993, Bayou Pierre perfected its security interest by filing a UCC-1F form pursuant to La.R.S. 3:3651 et seq. and La. R.S. 10:9-101 et seq.
The cotton crop was raised, picked, moduled, ginned, baled, and sold. However, the proceeds were insufficient to satisfy all the claims of Bat Farms' creditors. Bayou Pierre, the first to file suit, petitioned for a writ of sequestration on the warehouse receipts or proceeds from the sale of the cotton and prayed that there be judgment recognizing its entitlement to $47,700 of the proceeds and attorney's fees. Melrose, T.L. James, and Ag Services each answered the suit and filed a reconventional demand against Bayou Pierre. A proliferation of cross-claims, third-party demands, and oblique actions followed. After the proceeds from the sale of the cotton, $124,412.05, were deposited into the registry of the court, T.L. James, Melrose, and Bayou Pierre filed motions for summary judgment and rules to rank the liens.
By stipulation, the parties agreed to consolidate the motions for summary judgment and rules regarding the security interests and their ranking. The parties also stipulated as to the facts and evidence and consented that the district court could render a final judgment on the evidence in the summary proceedings.
The district court granted T.L. James' and Melrose's motions for summary judgment and awarded them rent for the land in the amount of $55,000, plus interest and attorney's fees. In addition, the district court awarded them $5,000 plus interest against S *1160 & E Planting Co. and others for rent under the equipment lease. The district court also granted Bayou Pierre's motion for summary judgment and awarded it $39,264.50 plus interest and attorney's fees. A final judgment was signed ranking the priorities of the liens in the following order in accordance with La.R.S. 9:4521:(1) Bayou Pierre; (2) T.L. James and Melrose; and (3) Ag Services.
T.L. James, Melrose, and Ag Services appealed the district court's judgment. The court of appeal affirmed the money judgments but modified the ranking order as follows: (1) T.L. James; (2) Ag Services; (3) Bayou Pierre; and (4) Melrose.[1] According to the court of appeal, Bayou Pierre did not qualify as a laborer under La.R.S. 9:4521, thus it was not entitled to a first ranking privilege over the proceeds of the crop. The court of appeal determined that Bayou Pierre did not pick the cotton itself, rather, it only hired people who operated the mechanical cotton pickers that picked the cotton. By strictly construing La.C.C. art. 3217, the court of appeal concluded the laborer's privilege was intended to protect the workers who actually ran the machines that picked the cotton and not the contractor who hired the workers to pick the cotton. Thus, the court of appeal ruled that Bayou Pierre did not have a laborer's privilege and was not entitled to a first ranking privilege over the proceeds of the cotton crop.
We granted Bayou Pierre's application for certiorari, Bayou Pierre Farms v. Bat Farms Partners, III, et al., 96-2826 (La.1/24/97); 686 So.2d 853, to determine whether Bayou Pierre qualified as a laborer entitled to a first ranking privilege under La.C.C. art. 3217 and La.R.S. 9:4521. La. Sup.Ct.R. X, § 1(a)(2).

LAW
All of the financing statements involved in this case were filed under both Louisiana's version of Article 9 of the UCC (La.R.S. 10:9-101 et seq.) and its laws regarding security devices affecting farm products (La.R.S. 3:3651 et seq.). La.R.S. 10:9-312(5) is the normal rule for ranking UCC interests and provides, in pertinent part:
[p]riority between conflicting security interests in the same collateral shall be determined according to the following rules:
(a) Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection.
A parallel provision is found in Louisiana's farm products legislation, La.R.S. 3:3651 et seq. La.R.S. 3:3656(D) provides, in pertinent part:
Except as otherwise provided in this Section, each effective financing statement and other statement shall become effective against third parties on the date and at the time it is filed with the filing officer.
Both La.R.S. 10:9-312(5) and La.R.S. 3:3656(D) provide that liens should rank in the order of their recordation. However, an exception to this normal ranking rule is found in La.R.S. 9:4521 and La.C.C. art. 3217.[2] La.R.S. 9:4521 provides:
As a specific exception to R.S. 9:4770 and R.S. 10:9-201, the following statutory privileges and perfected security interests as affecting unharvested crops shall be ranked in the following order of preference, provided that such privileges and *1161 security interests have been properly filed and maintained in accordance with the central registry provisions of R.S. 3:3651 et seq.:
(1) Privilege of the laborer, the thresherman, combineman, grain driver, and the overseer.
(2) Privilege of the lessor.
(3) Perfected security interests under Chapter 9 of the Louisiana Commercial Laws in the order of filing, as provided by R.S. 3:3651 et seq.
(4) Privilege of the furnisher of supplies and of money, of the furnisher of water, and of the physician.
La.C.C. art. 3217 provides, in pertinent part, that the following debts are privileged on certain movables:
(3) The rents of immovables and the wages of laborers employed in working the same, on the crops of the year, and on the furniture, which is found in the house let, or on the farm, and on every thing which serves to the working of the farm.
....
(9) The privileges granted by this article, on the growing crop, in favor of the classes of persons mentioned shall be concurrent, except the privilege in favor of the laborer, which shall be ranked as the first privilege on the crop.
Laws on the same subject matter must be interpreted in reference to each other. La.C.C. art. 13. When read in pari materia, La.R.S. 9:4521(1) and La.C.C. art. 3217(3) and (9) provide a first ranking privilege to a laborer for payment of his wages. The laborer's privilege for payment of his wages is subjected to a stricti juris interpretation. La.C.C. art. 3185; Lumber Products, Inc. v. Crochet, 244 La. 1060, 156 So.2d 438 (La.1963).
While this court has never directly addressed the issue of who qualifies as a laborer under La.R.S. 9:4521(1) and La.C.C. art. 3217(3) and (9), we have addressed the issue of who qualifies as a laborer entitled to the laborer's privilege under The Private Works Act, specifically, La.R.S. 9:4801(D) and La. R.S. 9:4812. See Pringle-Associated Mortgage Corp. v. Eanes, et al., 254 La. 705, 226 So.2d 502 (La.1969) (on rehearing). In Pringle-Associated, we held that a subcontractor who pays his own employees wages for labor performed on a building project does not become legally subrogated to his employees' superior laborer's privilege provided by La. R.S. 9:4801(D) and La.R.S. 9:4812. We reasoned in Pringle-Associated that "[t]o permit the subcontractors to invoke legal subrogation for the payment of their employees' wages would in effect award them a first ranking privilege for their own credit against the owner." Id. at 515.[3]

DISCUSSION
Bayou Pierre complains the court of appeal erred in refusing to afford it the first ranking laborer's privilege on the crop proceeds deposited into the court registry.[4] After a review of the entire record, the court of appeal rejected Bayou Pierre's argument, reasoning that it was not a laborer under a strict construction of La.C.C. art. 3217. Rather, the court of appeal determined that Bayou Pierre was a contractor who was paid a contract price to pick the cotton and pay the wages of the workers who actually ran the machines that picked the cotton. We agree with the court of appeal's interpretation of La.R.S. 9:4521 and La.C.C. art. 3217.
Bayou Pierre is a partnership that entered into a contract with Bat Farms, whereby Bayou Pierre as the "Contractor" would receive compensation in return for supplying all the equipment and manpower necessary to pick the cotton grown by Bat Farms.
*1162 This written contract also included a provision for payment of Bayou Pierre's attorney's fees if it was necessary for Bayou Pierre to retain an attorney to collect its fee due under the contract. The laborers hired by Bayou Pierre, the "Contractor", who actually operated the machines that picked Bat Farms' cotton, were paid their wages by Bayou Pierre. This contractual relationship is analogous to the subcontractor-laborer relationship analyzed by this court in Pringle-Associated, supra.
Applying a stricti juris interpretation to La.R.S. 9:4521 and La.C.C. art. 3217, we find the first ranking laborer's privilege applies only to a laborer for that laborer's unpaid wages. In this case, the laborers who actually picked the cotton were paid their wages. The plain wording of La.C.C. art. 3217 provides a first ranking privilege only to laborers for payment of their wages. Therefore, even if the laborer's who actually picked the cotton had not been paid their wages, Bayou Pierre, as the employer of these laborers, is precluded by La.C.C. art. 3217 from claiming the laborer's privilege as that privilege belongs only to the laborers who actually picked the cotton and who were not paid their wages. Bayou Pierre contracted with Bat Farms to provide a service for Bat Farms in return for compensation; it is not a laborer who picked Bat Farms' cotton in return for wages. Thus, Bayou Pierre is not a laborer suing for payment of his unpaid wages; rather, it is a contractor suing for the amount due under a contract.
For the reasons expressed above, we find that Bayou Pierre is not entitled to a first ranking laborer's privilege under La.R.S. 9:4521 and La.C.C. art. 3217. Accordingly, we affirm the judgment of the court of appeal.

DECREE
The judgment of the court of appeal is affirmed.
TRAYLOR, J., dissents and assigns reasons.
TRAYLOR, Justice, dissenting.
The majority holds that La.R.S. 9:4521, which gives first priority among perfected security interests to "the laborer, the thresherman, combineman, grain driver, and the overseer" does not give Bayou Pierre such first priority among perfected security interests because Bayou Pierre, as a partnership, is not a laborer pursuant to the statute. I disagree.

Security Devices Affecting Farm Products
Initially, the majority's discussion of the law of security interests as it relates to the instant case improperly interprets R.S. 9:4521. All Louisiana privileges, whether possessory or non-possessory, are subordinate to a perfected Chapter 9 security interest unless those privileges fall within one of the limited exceptions found within § 10:9-201 and in § 10:9-310. First Nat'l Bank of Boston v. Beckwith Machinery Co., 650 So.2d 1148, 1152 (La.1995). The standard priority ranking among perfected interests is according to the first in time to file or perfect. La.R.S. 10:9-312(5). La.R.S. 10:9-210 contains two exceptions: (1) where the legislature expressly provides for a different priority within the statute creating the lien, and (2) a possessory lien has priority over subsequently perfected security interests.[1]Id. at 1154. Coincidentally, the Court in Beckwith cites to La.R.S. 9:4521 for an example of the first exception.[2]Id.
By its language, La.R.S. 9:4521 is a specific exception to the normal priority in ranking privileges and security interests as affecting unharvested crops. However, La.R.S. 9:4521 only involves security interests perfected under Chapter 22-A of the Louisiana Agriculture and Forestry Laws. R.S. 3:3651 et seq. The statute provides: "... provided that such privileges and security interests have been properly filed and maintained in accordance with the central registry provisions of *1163 R.S. 3:3651 et seq.: ..." This proviso clearly applies to both the "statutory privileges" and the "perfected security interests" that the statute addresses. Thus, only security interests protected by a filing under R.S. 3651 et seq. or those perfected under Chapter 9 fall within the statute's exceptional ranking.
The majority's determination that Bayou Pierre would not be a "laborer" under La. C.C. art. 3217 is an irrelevancy in this case. The only issue here is whether Bayou Pierre qualifies as a laborer under R.S. 9:4521. In using Article 3217 to insert "for payment of his wages" into R.S. 9:4521(1), the majority is mixing the proverbial apples and oranges. Although we must interpret laws pertaining to the same subject matter in reference to each other, R.S. 9:4521 and Article 3217 do not pertain to the same subject matter. R.S. 9:4521 deals exclusively with protected security interests perfected under either Chapter 9 of the Louisiana Commercial Laws or under Chapter 22-A of the Louisiana Agriculture and Forestry Laws. Conversely, the privileges of Article 3217 are not perfected security interests and are thus subordinate to the interests enumerated in R.S. 9:4521. Unlike R.S. 9:4521, Article 3217 does not contain the required express provision in order to make it an exception to the priorities of La.R.S. 10:9-312(5). Therefore, any privilege bestowed by Article 3217 would be subordinate to all perfected security interests.

Business Entities Ineligible Under R.S. 9:451(1)
After the misinterpretation of R.S. 9:4521 via the unrelated Article 3217, the majority's discussion and analysis which follows is flawed for several reasons. The basis of the holding is that Bayou Pierre cannot be a laborer because Bayou Pierre is a partnership that entered into a contract to pick the cotton.
The majority holds that only individuals are eligible for first priority under R.S. 9:4521(1).[3] The majority seems to have no problem with the fact that the remaining claimants in this case are all business entities. The majority fails to even address this discrepancy. The majority, without discussion, holds that T.L. James, Inc., the corporation who leased the land to Bat Farms, and Ag Services of America, Inc., another corporation, are ranked first and second in order of priority pursuant to R.S. 9:4521(3). T.L. James, Inc., according to the appellate court, could not use the lessor's privilege of R.S. 9:4521(2) because they did not act in a timely manner. Bayou Pierre Farms v. Bat Farms Partners, III, 676 So.2d 643, 647-48 (La.App. 3 Cir.1996). The appellate court held that otherwise T.L. James, Inc. would have been eligible under R.S. 9:4521(2) as a lessor. Id. By affirming, the majority now holds that R.S. 9:4521(2), along with 9:4521(3), is applicable to business entities. How can subsections (2) and (3), and assumedly (4), include businesses, while subsection (1) only applies if there is no business organization involved? The statute itself makes no such distinction. There is nothing here to support such a disparate treatment of claimants within the same statute. Had the legislature intended such an inconsistency, it would have indicated as much. The majority, without any discussion, rewrites R.S. 9:4521, inserting "individual" into subsection (1) while adding "individual or corporation or partnership" into subsections (2) through (4).
Most troubling is that the majority's analysis of R.S. 9:4521 fails to address the purpose of the statute and fails to appreciate the repercussions of their holding upon that purpose. The purpose of subsection (1) is that crops will not go unharvested for possible lack of adequate funds to pay all prior creditors. The claimants enumerated in subsection (1) are those involved in the harvest. Such claimants are chronologically last in the line of creditors. By giving the harvester the protection of first priority, the statute ensures that the crops will be harvested. Absent this privilege, the harvester will be reluctant to accept a contract with any grower who is less than absolutely financially sound. A harvester would not likely gamble that the proceeds will be sufficient to cover all previous creditors.
*1164 Under today's holding, no business entity can use R.S. 9:4521 to ensure that it will be paid to harvest the crops. This will place businesses such as Bayou Pierre in the position to have to financially assess their prospective client farms before entering into a contract to harvest. The financial assessment will have to be detailed to such a degree that the business can determine that the proceeds from the potential crops will cover all previously perfected security interests with sufficient funds remaining to pay the harvesting business. If the grower is deficient, or even potentially deficient, the harvesting business will decline for fear of the loss. The crops will go unharvested. The more financially precarious a grower is, the more likely his crops will spoil in the field. The consequences are obvious. None of his creditors will be paid. Furthermore, good crops will spoil for want of harvest. Both of these are against public policy and violate the apparent intent of the statute's privilege.
Additionally, the only remaining claimants eligible under the statute do not, as a practical matter, obtain security interests in crops. Today's holding is that subsection (1) refers only to individuals and does not apply to a business entity. Such an interpretation renders subsection (1) meaningless. Individual laborers do not perfect security interests in unharvested crops.[4] A farm operator is highly unlikely to consider an individual laborer as a creditor. Neither is a farm operator likely to give an individual laborer a security interest in his unharvested crops.[5]
Because the majority's holding leads to the absurd result that business entities are protected under R.S. 9:4521(2), (3), and (4) while they are ineligible under R.S. 9:4521(1) despite the lack of any supporting statutory language, and because the holding ignores the purpose of R.S. 9:4521(1) and renders it meaningless, I must respectfully dissent.
NOTES
[*] Knoll, J., not on panel; recused. Rule IV, Part 2, § 3.
[1] The court of appeal determined that Melrose could not rely on T.L. James' financing statement for ranking purposes as Melrose's financing statement did not contain the original file number and in no way indicated it was an assignment of a financing statement as required by La.R.S. 3:3656. In addition, the court of appeal also found that Melrose's own financing statement was not an effective financing statement for ranking purposes as there was no signature of the debtor as required by La.R.S. 3:3654(E)(3). Thus, the court of appeal ruled that Melrose did not have a perfected security interest in the proceeds of the cotton crop.
[2] All privileges are subordinated to a perfected Chapter 9 security interest in the same property unless the privilege falls within one of the limited exceptions giving them priority. First National Bank of Boston v. Beckwith Machinery, 94-2065, p. 6 (La. 2/20/95); 650 So.2d 1148, 1152.
[3] See also Fortier v. Delgado & Co., 122 F. 604 (5th Cir.1903). In Fortier, the U.S. Fifth Circuit Court of Appeals addressed the issue of who qualifies as a laborer entitled to the laborer's privilege under Louisiana law. The Fifth Circuit held that persons having contracts with a sugar refinery to weigh and load cane on cars for shipment to the refinery at an agreed price per ton, and who hired and paid the laborers to do the work, are independent contractors, and not laborers whose wages have a special privilege on the crop under Louisiana law. Id. at 605.
[4] We pretermit the issue of whether the laborer's privilege applies only to unharvested crops and not to the proceeds of the crops. We also do not address Bayou Pierre's claim that it is entitled to a first ranking harvester's privilege because no provision in the Louisiana Civil Code provides a general harvester's privilege.
[1] The exception provided by § 10:9-310, which governs certain possessory privileges, does not concern us here.
[2] The Court uses the statute as an example of the legislature creating an express exception by granting nonpossessory privileges priority over perfected security interests.
[3] If laborers cannot be a business entity, then it must follow that threshermen, combinemen, grain drivers, and overseers must likewise be individuals.
[4] The majority acknowledges and discusses the requirements for effectively filing under Chapter 22-A. Op. at n. 1.
[5] Individuals hired for farm labor are protected by La.C.C. art. 3217, which does not require perfecting by filing as does R.S. 9:4521.