# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 06-569

**DELTON RAY COUTEE**

**VERSUS**

**RAYLAND K. BEURLOT**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 101,341
HONORABLE RICHARD ERIC STARLING,  JR., CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**Amy, J., dissents and assigns reasons.**

**AFFIRMED AND AMENDED.**

Eugene Joseph Sues
Gold, Weems, Bruser, Sues & Rundell
P. O. Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
Counsel for Defendant/Appellant:
Rayland K. Beurlot

**Eugene A. Ledet Jr.**
**Rivers, Beck, Dalrymple & Ledet**
**P. O. Drawer 12850**
**Alexandria, LA 71315-2850**
**(318) 445-6581**
**Counsel for Plaintiff/Appellee:**
**Delton Ray Coutee**

**SAUNDERS, Judge.**

The plaintiff filed suit against his former treating physician for breach of physician-patient privilege, intentional infliction of emotional distress, and invasion of privacy. The patient brought his action against his physician because his physician allegedly disclosed private, confidential information to the patient's adversary at an ex parte meeting held to discuss the physician's testimony in the patient's upcoming maritime trial.

The physician, having already been deposed by both parties in the maritime action, admitted to attending the ex parte meeting at which the patient's work status was discussed relative to new records given to the physician by the attorney for patient's adversary.

The trial court found that the physician had breached the physician-patient privilege and awarded the patient twenty thousand dollars for emotional distress. The physician appealed this finding arguing that the patient had waived the physician-patient privilege, that the patient had failed to prove the necessary elements of intentional infliction of emotional distress or invasion of privacy and that the patient had failed to show any damage or injury resulted from the physician's actions.

We affirm and amend the award to ten thousand dollars.

**FACTS AND PROCEDURAL HISTORY**

On January 5, 2001, Delton Ray Coutee ("Coutee"), a roughneck working offshore for Global Marine Drilling Company ("Global"), allegedly slipped and fell and sustained injuries. Coutee subsequently filed a maritime action against Global under the Jones Act in state court.

While getting treatment for his alleged injuries, Coutee was referred to Dr. Rayland K. Beurlot ("Dr. Beurlot"). Dr. Beurlot saw Coutee one time for the purposes

of performing a physical medicine consultation.

On June 19, 2003, the oral deposition of Dr. Beurlot was taken pursuant to notice, with a court reporter present. Dr. Beurlot was questioned by both the attorneys for Coutee and Global concerning his examination, findings, diagnoses and opinion of Coutee. Dr. Beurlot's opinion was that Coutee could perform a medium duty level of work.

Following Dr. Beurlot's deposition, counsel for Global arranged an ex parte meeting with Dr. Beurlot in order to discuss Dr. Beurlot's testimony for the upcoming maritime trial. During this meeting, Dr. Beurlot was given other records pertaining to Coutee. At the maritime trial, Dr. Beurlot testified that he had participated in an ex parte meeting with Global's counsel, that he had received records pertaining to Coutee from Global's counsel and that his opinion regarding Coutee's work status had changed to reflect that he felt Coutee could perform heavy manual labor.

Subsequent to losing his lawsuit against Global, Coutee filed suit against Dr. Beurlot. Coutee alleged that Dr. Beurlot, by participating in ex parte communications with Global, had (1) breached the physician-patient privilege; (2) intentionally inflicted emotional distress upon him; and (3) invaded his privacy.

After a bench trial on the merits of Coutee's claims against Dr. Beurlot, the trial court found that Dr. Beurlot had breached the physician-patient privilege and that Coutee had shown that he was entitled to damages in the amount of twenty thousand dollars from Dr. Beurlot for emotional distress. Dr. Beurlot appealed this ruling.

We affirm in part and amend in part.

**ASSIGNMENTS OF ERROR:**

1.  Was the trial court manifestly erroneous or clearly wrong in finding that Dr. Beurlot disclosed confidential medical information and/or breached the physician-patient privilege?

2.      Did the trial court create a cause of action for the plaintiff without a statutory or jurisprudential basis and without proof of the essential elements to support a cause of action for invasion of privacy or intentional infliction of emotional distress?

3.      Was the trial court clearly wrong in finding that plaintiff suffered injury or damage?

**ASSIGNMENT OF ERROR #1:**

Dr. Beurlot contends that the trial committed legal error in finding that Dr. Beurlot disclosed confidential medical information and/or breached the physician-patient privilege. We disagree.

A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

The applicable codal articles are as follows:

*Louisiana Revised Statutes 13:3734*

> **Privileged communication between health care provider and patient**
>
> > As used in this Part.
>
> > [A]    (1) "Health care provider" means a hospital, as defined in Paragraph (3) hereof, and means a person, corporation, facility, or institution licensed by the state to provide health care or professional services as a physician, hospital...or agent thereof acting in the course and scope of his employment.

3

(2) "Patient" means a natural person who receives health care from a licensed health care provider.

....

(5) "Communication" means the acquiring, recording or transmittal, of any information, in any manner whatsoever, concerning any facts, opinions or statements necessary to enable the health care provider to diagnose, treat, prescribe or to act for the patients; said communications may include, but are not limited to any and all medical records, office records, hospital records, charts, correspondence, memoranda, laboratory tests, and results, x-rays, photographs, financial statements, diagnoses and prognoses.

(B) In noncriminal proceedings, testimonial privileges, exceptions, and waiver with respect to communications between a health care provider and his patient are governed by the Louisiana Code of Evidence.

(C) An action or proceeding described in Louisiana Evidence Code Article 510(B)(2) which constitutes an exception for a health care provider to testify at a trial on the merits also shall be an exception for purposes of any discovery method authorized by Article 1421 et seq. of the Louisiana Code of Civil Procedure.

*Louisiana Code of Evidence Article 502*

**Waiver of privilege**

**(A) Waiver.** A person upon whom the law confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.

[Comment](e)As to waiver by taking the deposition of or requesting and obtaining the examining physician's report, see C.C.P. Art. 1465.

*Louisiana Code of Evidence Article 510 (A)*

**Health care provider-patient privilege**
**A. Definitions.**
As used in this article:

(1) "Patient" is a person who consults or is examined or interviewed by another for the purpose of receiving advice, diagnosis, or treatment in regard to that person's health.

(2) "Health care provider" is a person or entity defined as such in R.S. 13:3734(A)(1), and includes a physician and psychotherapist

4

as defined below...

(3) "Physician" is a person licensed to practice medicine in any state or nation.

....

(8) (a) "Confidential communication" is the transmittal or acquisition of information not intended to be disclosed to persons other than:

> (i) A health care provider and a representative of a health care provider.
>
> ...
>
> (iv) A patient's health care insurer, including any entity that provides indemnification to a patient.

> (b) "Confidential communication" includes any information, substance, or tangible object, obtained incidental to the communication process and _any opinion formed as a result of the consultation,_ examination, or interview and also includes medical and hospital records made by health care providers and their representatives. (Emphasis and underscore added)

>> [Comment] (h) The phrase "health care insurer" in Paragraph (A)(8)(a)(iv) is broader than entities denominated as insurance companies, and, as this Paragraph expressly states, includes any entity that provides indemnification to patients, hence including self-insurers and government plans, etc.

*Louisiana Code of Evidence Article 510 (B)*

> (1) **General rule of privilege in civil proceedings.** In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from _disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition_ between or among himself or his representative, his health care provider, or their representatives.
> (Emphasis and underscore added)

> (2) **Exceptions.**

>> (a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding.

*Louisiana Code of Evidence Article 510 (E)*

5

**Waiver.** The exceptions to the privilege set forth in Paragraph B(2) shall constitute a waiver of the privilege only as to _testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Article 1421 et seq._, or pursuant to R.S. 40:1299.96 or R.S. 13:3715.1.
(Emphasis and underscore added)

*Louisiana Code of Civil Procedure Article 1421*

Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examinations; request for release of medical records; and requests for admission. Unless the court orders otherwise under Article 1426, the frequency of use of these methods is not limited.

*Louisiana Code of Civil Procedure Article 1465 (B)*

By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, _regarding the testimony_ of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.
(Emphasis and underscore added)

The record indicates that Dr. Beurlot engaged in unauthorized, ex parte communications with Global in preparation for the upcoming maritime trial between Coutee and Global. This court must decide whether information disclosed by Dr. Beurlot to Global violated the privilege between Dr. Beurlot and Coutee. This issue is one of utmost importance. There exists a confidential, personal and professional relationship between physician and patient and as such, there is a strong public policy in favor of protecting those communications made by a patient to his or her treating physician. To undermine the confidence between physician and patient is not something this court is inclined to do lightly.

Coutee maintains that the proper statute that created his cause of action is La. R.S. 13:1374. Under La.R.S. 13:1374 (A), Dr. Beurlot is a "health care provider" and

Coutee is a "patient" and they engaged in a "communication" as defined by the statute. Part (B) of La.R.S. 13:1374 then mandates that we look to the Louisiana Code of Evidence to govern the issue at bar dealing with privileges regarding communications between health care provider and patient.

Louisiana Code of Evidence Article 510 (B) establishes the general rule regarding privilege between health care provider and/or physician and patient as to confidential communications in noncriminal proceedings. Dr. Beurlot is included in the definition of "health care provider," as well as the definition of "physician." Further, Coutee is a "patient" as defined in the article. As such, any "confidential communication" between Dr. Beurlot and Coutee is subject to the physician-patient privilege under part (B) of La.Code Evid. art. 510.

Dr. Beurlot contends that any information he disclosed to Global during the ex parte meeting was not a "confidential communication" as defined by La.Code Evid. art. 510(A)(8)(a)(iv) because it was he that received information from Global, not Global that received information from him. Dr. Beurlot's testimony as to what was communicated at the ex parte meeting has been consistent. He testified that the communications between he and Global at the ex parte meeting were regarding the work status of Coutee. He also testified that Global gave him Coutee's employment records from a job Coutee recently had been performing with a different employer. The employment records indicated that Coutee had been performing a job that required a different work status from that Dr. Beurlot opined Coutee could perform. After this meeting, Dr. Beurlot changed his opinion regarding Coutee's work status and testified at the maritime trial that if Coutee was performing a job with a certain work status without any complaints of pain, then he saw no reason why Coutee could

7

not continue to work at a job with that same work status.

We find that a physician's opinion about the work status of his patient is a "confidential communication" as defined by LaCode Evid. art. 510(A)(8)(b). Dr. Beurlot formed his opinion about his patient's work not only from the records he received during his unauthorized ex parte meeting with Global, but also with information he obtained from his consultation with his patient. Therefore, we find that a physician discussing his patient's work status is a "confidential communication" as defined by the statute and was subject to the physician-patient privilege.

Dr. Beurlot also argues that any information communicated to Global was not a "confidential communication" because Global was Coutee's health care insurer. Dr. Beurlot's argument is based on La.Code Evid. art. 510 (A)(8)(a)(iv). Louisiana Code of Evidence Article 510 (A)(8)(a)(iv) removes information given to a health care insurer, including any entity that indemnifies a patient, from being classified as a "confidential communication." The record indicates that Global indemnified Coutee for Dr. Beurlot's services. As such, Dr. Beurlot contends that any communication relevant to Coutee's claim against Global was not a "confidential communication" as defined by the article. Therefore, any information disclosed to Global that was relevant to Coutee's claim against Global is not subject to the physician-patient privilege.

Louisiana Civil Code Article 9 requires that when interpreting language of a statute, it cannot lead to absurd consequences. Further, courts should not interpret statutes that makes a part of the statute meaningless and superfluous. *In re Succession of Boyter*, 99-0761 (La. 1/7/00), 756 So.2d 1122; *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065 (La. 2/20/95), 650 So.2d 1148; *Matter of Am. Waste*

8

*and Pollution Control Co.*, 93-3163 (La. 9/15/94), 642 So.2d 1258; *CHF Finance Co., Inc. v. Jochum*, 241 La. 155, 127 So.2d 534 (La.1961).

If this court were to interpret La.Code Evid. art. 510 (A)(8)(a)(iv) as Dr. Beurlot suggests, then there would be no need for La.Code Evid. art. 510 (B)(2)(a), nor La.Code Evid. art. 510 (E). Further, La. Code Evid. art. 510 (A)(8)(a)(iv) refers to patient information relative to payment of bills by a health care insurer. The purpose of La.Code Evid. art. 510 (A)(8)(a)(iv) is to help facilitate payment from a health care insurer to a health care provider for services rendered. What the patient's health care issues are, when referenced by codes, is privileged information, and therefore need to be excluded as "confidential communications" so that a patient's bills can be paid by a health care insurer in a timely manner. Therefore, we find that this argument put forth by Dr. Beurlot has no merit.

The provisions applicable to the case at bar are La.Code Evid. art. 510 (B)(2)(a), La.Code Evid. art. 510 (E) and La.Code Civ.P. art. 1421. Under La.Code Evid. art. 510 (B)(2)(a), any person that brings a personal injury action in a judicial proceeding waives the physician-patient privilege. This waiver is limited by La.Code Evid. art. 510 (E) only for trial testimony or under delineated discovery methods under La.Code Civ.P. art. 1421 etseq. , La.R.S. 40:1299.96 or La.R.S. 13:3715.1.

Louisiana Revised Statutes 40:1299.96 and La.R.S. 13:3715.1 deal with medical records, whereas here, we are dealing with oral communications. Therefore, any waiver under La.Code Evid. art. 510 (B)(2)(a) that could apply to the oral disclosure by Dr. Beurlot would have to fit under the discovery methods of La.Code Civ.P. art. 1421. When we look to La.Code Civ.P. art. 1421, we, of course, do not see ex parte communications as one of the regular discovery procedures listed. This

9

statutory scheme is evidenced by La.R.S. 13:3734 (C) that references the relationship between La.Code Evid. art. 510 (B)(2) and La.Code Evid. art. 510 (E) by allowing a health care provider to answer discovery propounded under La.Code Civ.P. art. 1421. Therefore, we find that Coutee did not waive the privileged status of his medical information that would allow his treating physician to speak freely during an ex parte meeting with an opponent in a judicial proceeding.

Next Dr. Beurlot points to La.Code Evid. art. 502(A) to argue that Coutee waived any privilege on information regarding his health care in relation to his work status by allowing the doctor to give his deposition. Under La.Code Evid. art. 502(A) a person that has a privilege, while holder of that privilege, waives that privilege if he consents to a significant part of the privileged information to be disclosed.

What Dr. Beurlot failed to note about La.Code Evid. art. 502(A) is comment (e) under that article. Comment (e) of 502 (A) refers to La.Code Civ.P. art. 1465 when dealing with waiver of privilege via a taking of a deposition. Louisiana Code of Civil Procedure article 1465 says that a patient waives any privilege he or she can assert about health conditions when one of his or her examiners is allowed to testify regarding the same mental or physical condition. Under La.Code of Civ. P. art. 1465, Coutee did waive his right to keep Dr. Beurlot from testifying, but he did not waive his right to keep Dr. Beurlot from participating in an unauthorized, ex parte meeting with his patient's adversary and discuss his patient's relevant condition. As such, this statute still does not allow Dr. Beurlot to breach his obligation to Coutee to uphold the physician-patient privilege. Therefore, we again find that this argument put forth by Dr. Beurlot has no merit.

It is clear from the record and from proper interpretation of the applicable statutes, that the trial court, in using its discretion to make a factual determination as

10

to whether Dr. Beurlot breached the physician-patient privilege, was not manifestly erroneous or clearly wrong. We find that the various arguments put forth by Dr. Beurlot to explain why he could breach the confidential, personal and professional relationship between he and his patient to be without any merit. Thus, the trial court's finding that Dr. Beurlot breached the physician-patient privilege is affirmed.

**ASSIGNMENT OF ERROR #2:**

Dr. Beurlot claims that the trial court erred in creating a cause of action for the Coutee without a statutory or jurisprudential basis and without proof of the essential elements to support a cause of action for intentional infliction of emotional distress or invasion of privacy. While there is no evidence that the trial court based its ruling on a finding of intentional infliction of emotional distress or invasion of privacy, but because appellant brings forth the issues and those two causes of action were included on the plaintiff's petition, in the interest of judicial efficiency, we will address them.

> [I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."
> *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991).

The record is completely devoid of any evidence that Dr. Beurlot either actively desired or was substantially certain that his conduct would cause Coutee severe emotional distress. Quite the contrary, Dr. Beurlot has consistently testified that his understanding was that Global could meet with him ex parte and that Global was entitled to ask any questions involving anything he had already been deposed upon regarding Coutee. There is no evidence in the record that Dr. Beurlot wanted, "to inflict severe emotional distress" or that he, "knew that severe emotional distress would be certain or substantially certain to result from his conduct." *Id.* at 1209.

11

Therefore, because Coutee failed to put forth any evidence of this essential element, we find that the record does not support a cause of action for the plaintiff against Dr. Beurlot for intentional infliction of emotional distress.

In the second part of their assignment of error #2, Dr. Beurlot asserts that Coutee also failed to prove the essential elements invasion of privacy. The right to privacy is defined in Louisiana as "the right to be let alone." *Pack v. Wise*, 155 So.2d 909, 913 (La.App. 3rd Cir.1963) *writ denied* 157 So.2d 231 (La.1963) quoting *Hamilton v. Lumbermen's Mut. Cas. Co.*, 82 So.2d 61, 63 (La.App. 1st Cir. 1955), *writ denied* (La.1955). A tort of invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness, (2) by unreasonably intruding on physical solitude or seclusion, (3) by giving publicity which unreasonably places a person in a false light before the public and (4) by unreasonable public disclosure of embarrassing private facts. *Jaubert v. Crowley Post-Signal, Inc.*, 375 So.2d 1386 (La.1979).

The record does not support that any of the above four occurrences transpired. There is no evidence that Dr. Beurlot appropriated Coutee's name or likeness. There is no evidence that Dr. Beurlot intruded on Coutee's physical solitude or seclusion. There is no evidence that Dr. Beurlot place Coutee in a false light privately, much less publically. While there is some evidence that Dr. Beurlot unreasonably disclosed private facts about Coutee, the fact that a person's work status is that of heavy manual labor as opposed to medium duty is hardly the type of embarrassing, private facts necessary to recover for an invasion of privacy. Therefore, we find that the record does not support a cause of action for the plaintiff against Dr. Beurlot for invasion of privacy.

**ASSIGNMENT OF ERROR #3:**

Dr. Beurlot alleges that the trial court erred in finding that plaintiff suffered injury or damage. We disagree.

A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart,* 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler,* 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112.

There is evidence in the record that Coutee suffered injury or damage. Coutee testified that he was upset by the testimony Dr. Beurlot gave at the maritime trial. Coutee felt he was being called a liar and testified that it will always bother him. Further, Coutee's wife also testified that Coutee was upset and has a general distrust of physicians now because he felt Dr. Beurlot had lied about him. The trial court gave credence to the testimony of Coutee and his wife. In its reasons for judgment, the trial court felt that it was obvious that Coutee felt psychological effects from having his private, privileged information discussed between his former physician and a third party. Given that there is evidence to support the trial court's finding that Coutee suffered emotional injury, and keeping in mind the manifestly erroneous standard of review, we cannot say that the trial court was clearly wrong in finding that Coutee was injured and damaged by Dr. Beurlot.

However, we do find that the award of twenty thousand dollars for those injuries to be excessive. The proper standard for reviewing general damage awards was enunciated in *Guillot v. Doe,* 03-1754, p. 5-6 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, at 379-80.

13

An appellate court should rarely disturb an award of damages due to the great and, even, vast discretion vested in the trial court. We can disturb such awards, only, when the trial court clearly abused its discretion. Reasonable people often disagree over the appropriate measure of general damages in a particular case. Yet, "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award."

We should not rely on a comparison of prior awards in cases with similar medical injuries to decide whether the trial court abused its discretion. "The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering."

Citations and footnote omitted.

A quantum assessment is reviewed on appeal by the "much discretion" standard. *Reck v. Stevens*, 373 So.2d 498 (La.1979). The appellate court's function is not to substitute its judgment for that of the trial court judge in this situation. If an abuse of discretion is found, the appellate court will only lower the award to the highest point which is reasonably within the discretion given to the trial court. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976).

While there is testimony of Coutee and his wife that Coutee has a general distrust of physicians and that Coutee was surprised and felt betrayed by the testimony of Dr. Beurlot, there is no evidence of Coutee receiving any medical treatment for his emotional injury. Further, the kind of information that was revealed by Dr. Beurlot, one's work status, is not such that would cause the emotional damage that would necessitate an award of twenty thousand dollars. Thus, based on these particular facts, we find that the trial court abused its discretion in awarding twenty thousand dollars to Coutee. The highest award we feel Coutee could recover under these facts is ten thousand dollars. Therefore, we amend those damages Dr. Beurlot owes to Coutee for his emotional damage to ten thousand dollars.

**CONCLUSION**

The judgment of the trial court is affirmed in part and amended in part. Costs of this appeal are assessed against Appellant.

**AFFIRMED AND AMENDED.**

NUMBER 06-569

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DELTON RAY COUTEE

VERSUS

RAYLAND K. BEURLOT

AMY, J., dissenting.

Certainly I understand Mr. Coutee's concern regarding Dr. Beurlot's conversation with his employer's counsel. Nevertheless, I find that he has failed to prove his entitlement to recover in this case. Mr. Coutee relies on La.R.S. 13:3734. Like La.Code Evid. art. 510, this provision merely relates to the *testimonial and discovery privilege* and, in my opinion, does not establish a basis for recovery in this case. Rather, it seems that Mr. Coutee's complaints may be better viewed as ones for breach of contract or conflict of interest; however, the plaintiff failed to present evidence necessary for this type of recovery.

For these reasons, I respectfully dissent.